(April 28, 1903.)

## SIMONS v. DALY.

[72 Pac. 507.]

SALE OF PERSONAL PROPERTY—DELIVERY AND POSSESSION.—1. A transfer of personal property is attacked as fraudulent under section 3021 of the Revised Statutes of 1887 on the grounds that it was not "accompanied by an immediate delivery and followed by an actual and continued change of possession of the things transferred." Evidence examined, and *held,* sufficient to support a verdict and judgment upholding such transfer. 2. The determina-

tion as to what constitutes "immediate delivery" and "actual possession" is purely a question of fact, to be determined by the jury from all the evidence in each particular case. 3. Where, after examination of the evidence on appeal, the appellate court would hesitate before either saying there is or there is not sufficient evidence to sustain the verdict, the judgment will not be disturbed.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

The facts are sufficiently stated in the opinion.

Hawley & Puckett and Wood & Wilson, for Appellants.

"The statute requires such a change as to preclude the hazard of the seller deriving a false credit from the continuance of his apparent ownership." (*Lesem v. Herriford,* 44 Mo. 325.) We submit that the case at bar is upon all-fours with the Missouri cases, and if the decisions there were correct, the same rule applies here. It is not enough that there is an actual delivery, and an actual change of possession between vendor and vendee, so long as the property without legal excuse is so placed back into the same condition and the same apparent relation to the vendor that there is no such manifest and continued change of possession as would indicate to the world that there has been a change of title. (*Harkness v. Smith,* 3 Idaho, 221, 28 Pac. 423; *Norton v. Doolittle,* 32 Conn. 405; *Lawrence v. Burnham,* 4 Nev. 361, 97 Am. Dec. 540; *Wright v. McCormick,* 67 Mo. 426; *Dean v. Walkenhorst,* 64 Cal. 78, 28 Pac. 60; *Godchaux v. Mulford,* 26 Cal. 316, 85 Am. Dec. 178; *Bassenger v. Spangler,* 9 Colo. 175, 10 Pac. 809; *Green v. Bonne,* 53 Cal. 254; *Hesthal v. Myles,* 53 Cal. 623.) The delivery must be made of the property, the vendee must take the actual possession, the possession must be open and unequivocal, carrying with it the usual marks and indications of ownership by the vendee. It must be such as to give evidence to the world of the claims of the new owner. (*Stevens v. Irwin,* 15 Cal. 507; *Kelly v. Murphy,* 70 Cal. 563, 12 Pac. 467; *Bunting v. Saltz,* 84 Cal. 172, 24 Pac. 167; *Etchepare v. Aguirre,* 91 Cal. 295, 25 Am. St. Rep. 180, 27 Pac. 668; 14 Am. & Eng.

Ency. of Law, 290, and cases cited under note 3; *Thompson v. McGreal,* 10 Tex. 393; *Edrington v. Rogers,* 15 Tex. 188; *Pettibone v. Stevens,* 15 Conn. 19, 38 Am. Dec. 57; *Lavette v. Sage,* 29 Conn. 589; *Redfield v. Buck,* 35 Conn. 328, 95 Am. Dec. 241; *Brady v. Barnes,* 42 Conn. 522; *Upton v. Tribilcock,* 13 Nat. Bank. Reg. 181.)    Merely taking possession is not all that is required, even though that possession be bona fide. (*Lloyd v. Williams,* 6 Colo. App. 157, 40 Pac. 244.)    The change of possession required to uphold a transfer of a debtor's property as against creditors must be open and notorious, rendering such change of possession evident and visible.    (*Crampton v. Tarbell,* Fed. Cas. No. 3349; *Mosgrove v. Harris,* 94 Cal. 165, 29 Pac. 490; *Gillett v. Stoddard,* 30 Ill. App. 231; *State ex rel. Pierce v. Merritt,* 70 Mo. 275; *State ex rel. Smith v. Flynn,* 66 Mo. App. 373; *Weeks v. Preston,* 53 Vt. 57; *Comly v. Fisher,* Taney, 121, Fed. Cas. No. 3053; *Nuckolls v. Pence,* 52 Iowa, 581, 3 N. W. 631.)    Failure on the part of the vendee to make such inquiries as a reasonably prudent man would make renders the transaction fraudulent.    (*Kellogg v. Aherin,* 48 Iowa, 299; *Hole v. Creamer,* 34 N. J. Eq. 181; *Adler-Goldman etc. Co. v. Hathcock,* 55 Ark. 579, 18 S. W. 1048; *Buffum v. Jones,* 144 Mass. 29, 10 N. E. 471; *Garahy v. Bayley,* 25 Tex. Supp. 294.)

J. H. Richards, G. M. Parsons, Charles M. Kahn and W. E. Borah, for Respondents.

Whether the transfer of the goods was bona fide or fraudulent is a question of fact for the jury. (Benjamin on Sales, 2d ed., sec. 485; *Hesthal v. Myles,* 53 Cal. 623; Wait on Fraudulent Conveyances, 2d ed., sec. 254.)    "Where the sole question is one of fact and the evidence is conflicting, the finding of the jury will not be disturbed." (*Sears v. Flodstrom,* 5 Idaho, 314, 49 Pac. 11; *Simpson v. Remington,* 6 Idaho, 681, 59 Pac. 360; *Murphy v. Montandon,* 4 Idaho, 320, 39 Pac. 195; *Sabin v. Burke,* 4 Idaho, 28, 37 Pac. 355; *Reay v. Butler,* 95 Cal. 206, 30 Pac. 209.)    Every intendment is in favor of the judgment of the court of record, and until the contrary is made clearly to appear the appellate court is bound to suppose that it was based upon proper evidence.    In view, therefore, of the circumstances

shown in this case we think it cannot be said that the evidence was insufficient," etc. (*Stratton v. Burr* (Cal.), 54 Pac. 735; *Claudius v. Aguirre,* 89 Cal. 501, 26 Pac. 1077; *Byrnes v. Moore,* 93 Cal. 393, 29 Pac. 70; *Porter v. Bucher,* 98 Cal. 454, 33 Pac. 335; *Tuckwood v. Hanthorn,* 67 Wis. 326, 30 N. W. 710.) In any event, the evidence on the question of change of possession and continued change of possession is conflicting; the jury passed upon the credibility of the witnesses, as they had a right to do, and their verdict cannot be disturbed so far as this feature of the case is concerned. (*Ford v. Chambers,* 28 Cal. 13; *Grady v. Baker,* 3 Dak. 296, 19 N. W. 417; *Murphy v. Braase,* 3 Idaho, 544, 32 Pac. 208; *Packard v. Densmore,* 11 Cush. 282; *Russell v. O'Brien,* 127 Mass. 349; 14 Am. & Eng. Ency. of Law, 376 (5).) "Where a debtor conveys property to his brother to whom he is indebted and the consideration is not shown to be inadequate there is no fraud as to creditors." (*Krippendorf v. Trenoweth* (Colo. App.), 64 Pac. 373; *Cecna v. Nimmick,* 113 Pa. St. 70, 4 Atl. 193; *Howe v. Johnson,* 117 Cal. 37, 48 Pac. 978; *Tuckwood v. Hanthorn, supra; Williams v. Lerch,* 56 Cal. 330; *Morgan v. Miller,* 62 Cal. 492.)

AILSHIE, J.—Plaintiff commenced his action in the lower court against the defendants, charging them with wrongfully and unlawfully taking from the possession of plaintiff, on June 15, 1901, a stock of merchandise, together with store fixtures, of the value of $10,050; and defendants are further charged with the conversion of said property to their own use. Defendants answered, denying that any of said merchandise or fixtures was ever the property of plaintiff, but alleged that the same was, at the time of the seizure thereof by the defendant Daly as sheriff, the property of one Ad. M. Simons. Defendants then plead, in justification of the seizure of the said property by the defendant Daly as sheriff, certain judgments against Ad. M. Simons amounting to something over $5,000, and allege the seizure and sale of said property under and by virtue of executions issued upon said judgments and for the collection thereof. The cause went to trial with a jury, and a verdict was returned in favor of plaintiff, assessing his damages at $7,000, and judgment was

entered accordingly. Defendants moved for a new trial, and their motion was denied. From the judgment and order refusing a new trial, defendants appeal.

Briefly stated, the leading facts in the case are as follows: On May 14, 1901, Ad. M. Simons, a brother of plaintiff herein, was, and for a long time prior thereto had been, conducting a cigar and tobacco store at No. 807 Main street in Boise City, under the name of "Ad. M. Simons & Co." William Simons, the plaintiff, had been working for his brother for some time, and was familiar with all the business and stock on hand. On the date last named, what is claimed by respondent to have been a sale to him of the entire stock and business of "Ad. M. Simons & Co." took place. The father of these two brothers held a promissory note against Ad. for $6,000, and, a short time before this sale was made, gave the note to plaintiff as a present. Plaintiff gave his brother Ad. this note in payment for $6,000 for the stock of goods and fixtures, and agreed to pay him the further sum of $3,000 cash on demand in full payment for the property. A bill of sale was duly executed and delivered for all the property in question, and about the twenty-fifth day of May, 1901, the balance of $3,000 was paid. No inventory of the property was taken, but, on the next day after the bill of sale was executed, the keys to the store and all books and accounts were turned over to plaintiff, and the balance of cash on hand at the bank was transferred to him, and he conducted the business thereafter under the name of "Ad. M. Simons Co., Successors." Ad. left the same day for San Francisco, and was gone two or three weeks. None of the signs were changed on the store, except that in the store and in front of the office, where a large sign had hung bearing the name, "Ad. M. Simons & Co.," a new sign was placed, bearing the words, "Ad. M. Simons Co., Successors." A rubber stamp was procured the day after the sale, bearing the new name adopted, and the stationery was stamped accordingly in red ink, and checks, orders, etc., were signed in the same manner. Plaintiff explains the failure to take an inventory by saying that he was familiar with the entire stock, and already knew what his brother had on hand. Edmond Salmon, who had previously been a clerk for Ad. M. Simons, continued

to clerk for plaintiff, and testifies that he knew nothing of the sale, and supposed that he was still working for Ad. M. Simons until the goods were seized by the sheriff. At the same time, however, he admits noticing the new sign and stationery. Plaintiff testifies that he told Salmon of the sale the day it was made. The owner of the building where the store was run says that he had no notice of any sale having been made. This statement is contradicted by plaintiff. Plaintiff carried on the business until June 5th, when he was married, and went away for some ten days, leaving Salmon in charge of the business, and saying to him: "You know the way Ad. is. Do the best you can for me. Sometimes he shows up; sometimes he don't show up; so when you go to your meals he will be around there to relieve you; otherwise you look out for the store the same as you would look out for yourself. Do the best you can." About this time Ad. returned, and during the absence of plaintiff it appears that Ad. was in the store from time to time, and took charge of the books and carried the key to the safe and banked the money, and acted in many ways the same as he had done before the sale. At the time of this transaction, Ad. M. Simons was indebted to different firms from which he had bought goods to the extent. of over $10,000, and paid the $3,000 received from this sale to his creditors. Judgments were obtained by the creditors against Ad. M. Simons, and executions were issued to the defendant sheriff, and the property transferred by this sale was seized and sold at public auction. The foregoing are some of what we consider the leading facts which we have gleaned from the mass of testimony in this case.

The principal contention made by the appellants is that the sale claimed to have been made from Ad. M. Simons to William Simons was not "accompanied by an immediate delivery and followed by an actual and continued change of possession of the things transferred," as required by section 3021 of the Revised Statutes of 1887, and is "conclusively presumed to be fraudulent, and therefore void against those who are his creditors while he remains in possession." While this statute seems to be very plain, and at first thought it might occur to one that no difficulty or uncertainty could arise as to its application, still, when

we come to applying it to the numberless facts, circumstances, surrounding conditions, and various relations which the parties may sustain toward each other, the problem accompanying any particular transaction assumes a much more serious aspect, and we begin to question ourselves as to what "immediate delivery" and "actual possession" really mean.    Certainly, no fixed rule can be established as a test for ascertaining these results.    An examination of the numerous decisions of the courts under statutes similar to our own will at once demonstrate the futility of such an effort.    It must be conceded, we think, that these are purely questions of fact to be determined by the jury from the evidence in each particular case.| (*Godchaux v. Mulford,* 26 Cal. 316, 85 Am. Dec. 178; *Meads v. Lasar,* 92 Cal. 226, 28 Pac. 935.)    And in arriving at their conclusion the jury should have all the facts and circumstances which would throw any light on the transaction.    In *Claudius v. Aguirre,* 89 Cal. 501, 26 Pac. 1077, the supreme court of California, in considering section 3440 of the Civil Code of that state, which is the same as our section 3021, have said: "The circumstances connected with a transfer of personal property are so varied that it would be impossible to frame a rule applicable to each case, or to determine in advance what acts would be sufficient to meet the requirements of the statute.    When the transfer is challenged as fraudulent under this section, all the circumstances connected therewith are essential to a determination of its character, and it can very rarely be the case that there will not be such a conflict of testimony as to preclude this court from re-examining its sufficiency." | In the case under consideration, the evidence verges so nearly upon the border line that if we were called upon to decide the issue in the first instance, upon the evidence as it comes before us in the record, we should hesitate before either saying there was or was not a sale, as contended for by respondent. |The evidence brought before us in this case is a most forcible reminder of the difficult duty which devolves upon a jury and trial court in passing upon evidence so close, unsatisfactory, and conflicting, and amply illustrates the virtue in the oft-repeated statement that the jury and trial court meet the

witnesses face to face, and hear them testify, and observe their demeanor, and are therefore in a better position than the appellate court to judge of the weight to be given to each and every statement made. While the evidence as to the "immediate delivery" and "continued possession" of the property claimed is by no means satisfactory, we are not prepared to say that it is insufficient to support the verdict and judgment. Every presumption is in favor of the judgment of a court of record, and error will not be presumed. Such judgment should not be disturbed until the appellate court is fully satisfied that error has been committed. There was some evidence in this case tending to show that the transfer was accompanied by immediate delivery and followed by actual possession. The jury evidently believed this evidence, and returned their verdict accordingly. We cannot disturb the judgment founded thereon, upon the grounds of insufficiency of the evidence.

Counsel for appellants insist that the case of *Harkness v. Smith*, 3 Idaho, 221, 28 Pac. 423, is decisive of the question here raised. We cannot agree with this contention. The facts in that case were very different from the facts under consideration in this matter. There the sale was made at a distance of twenty-five miles from the property. The following day the vendee went to the store, and asked one of the clerks if he would continue to work for him (the vendee) at the same price he had worked for Gallager, the vendor. All the clerks were retained, two of them being the son and daughter of the vendor. Gallager continued to run the business as before, buying and selling, without any change of signs or anything to indicate that a sale had been made. Harkness, the purchaser, seems never to have been about the store except this one time. The facts in that case were all in favor of the sheriff, who was appellant.

Appellants complain of the rulings of the court in admitting certain evidence and excluding other testimony offered. The exhibits referred to in the transcript have not been furnished this court, and we have not examined them, but, so far as we have been able to gather their character and import from the record, we see no error in the rulings made by the trial court.

The action of the court in refusing to give to the jury fifteen separate instructions requested by defendants is urged here as error. The instructions given by the court cover thirteen printed pages of the transcript, while the requests of defendants cover nine more. The jury were abundantly, and we think correctly, instructed. We have compared all the requested instructions which were proper for the jury to have with the instructions given, and find them all covered, if not literally, substantially, by those given. Some of the requests were argumentative, confusing, and misleading, and were properly refused. They should have been stripped of much of their verbiage, and reached the point at once.

Judgment and order affirmed, with costs to respondent.

Sullivan, C. J., and Stockslager, J., concur.