LOUISA A. PIER v. WILLIAM H. SPEER.

Argued December 6, 1905—Decided June 18, 1906.

1. An exception to a ruling of the court so general in terms as to leave in doubt, upon its inspection, which of two several offers of evidence was intended to be presented to the mind of the court, is not sufficiently specific to be available on error.

2. The rejection of testimony as to an isolated circumstance, which is incompetent unless other testimony be supplied, is not erroneous in the absence of any offer to supply such deficiency.

3. While in actions for slander, evidence of the plaintiff's general bad character at the time of the alleged slander is admissible for the purpose of mitigating plaintiff's damages, testimony of particular facts affecting plaintiff's character cannot be received for such purpose.

The declaration in an action for slander charged the defendant with maliciously speaking, on various occasions, in the presence of others, defamatory words concerning the plaintiff, involving her reputation for chastity and general moral character. To this declaration the defendant pleaded the general issue, and a special plea of justification, concluding with these words, viz.: "That the said plaintiff, before the speaking and publishing of the said several words of and concerning the said plaintiff, as in the declaration mentioned, to wit, in the county of Essex and the county of Passaic, *was* a *bad woman;* that she was *not* a *fit woman* to bring up her children; that she *had had* an *illegitimate child;* that she did go to a hospital to have a *bastard;* that since her husband's death she has been *about to have bastards several times;* that whenever she has been in this condition she has brought on miscarriages herself; that this defendant has been up to the hospital and *can prove* that she was *going to have a bastard,* and that she did have a *miscarriage* from something *she had done to bring it on."* And also a further plea to the effect that at the time of the speaking and publishing the said several words, &c., the plaintiff applied to the defendant, as overseer of the poor of the town-

ship of Caldwell, in which the plaintiff then resided, for the support of herself and children by the township, and that the defendant was discussing with a member of the township committee of that township whether the plaintiff was a person worthy and fit to be supported by the township, and as to what course the township committee should pursue, and that the defendant did firmly believe the said words were true, and that the said words *were spoken without malice,* &c. To these pleas proper replications were filed and issue duly joined.

At the trial of the cause a member of the township committee of said Caldwell township, being produced by the plaintiff as a witness, stated that about in December, 1903, he was in the committee-room with the defendant and two others of the committee and their clerk, when a conversation occurred in which the defendant spoke about the plaintiff, and thereupon the plaintiff's counsel asked the witness what such conversation was. To this question the defendant objected, on the expressed ground that "there had been enough disclosed by the evidence to show that the occasion was a meeting of the township committee," and that "before the witness should be allowed to testify to what occurred at the meeting of the township committee the whole circumstances should be made out in order to see whether it is not a privileged communication." Upon the ruling of the court that the question was admissible, an exception was sealed for the defendant.

Afterwards, in the examination of witnesses for the defence, a physician, sworn on the part of the defendant, testified, without objection, as the record stands, that he had treated the plaintiff, as his patient, at the Orange Hospital, at a date not specified by him, and that such treatment was for gonorrheal sustitis, and that she was not entirely cured. The following colloquy then took place between the court and defendant's counsel, viz.:

"The court—I don't see how this evidence is competent.

"*Q.* Can gonorrhea be contracted without sexual intercourse?

"The court—That is beside the question. Suppose he says it can be contracted without; she was a married woman; she had been married before.

"Mr. MacLear—We offer to show by this witness that she had a venereal disease.

"The court—You now offer to prove by this witness that at the time this woman was in the hospital that she had a venereal disease. I sustain the objection. To which ruling of the court the defendant's counsel prays an exception. Exception allowed."

Motions were made to the court by the defendant at the close of the plaintiff's evidence for judgment of nonsuit, and also at the close of all the evidence for the direction of a verdict for the defendant, which were denied and exception taken. Verdict and judgment for plaintiff, and defendant brings error.

For the plaintiff in error, *Lindsley & MacLear.*

For the defendant in error, *Ward & McGinniss.*

The opinion of the court was delivered by

VREDENBURGH, J. The principal points assigned and urged as grounds of error relate to the rulings of the court on the admissions and rejection of evidence.

As to the admission of the conversation by defendant in the committee-room, it is apparent that the objection was addressed solely to the discretion of the trial court, and the overruling of defendant's objection that the whole circumstances should first be shown worked him no injury. The court subsequently charged the jury upon that subject in his favor and without exception by him.

The defendant's exception to the ruling of the court lastly above set forth cannot be sustained under the well-settled rules of practice. Two distinct subjects are embraced in one bill of exceptions. It was long ago held that "a bill of exceptions must distinctly state and specify each exception, so as to show that the mind of the trial judge was particularly

called to each several objections." It is impossible to determine, from the frame of this exception, whether the trial judge intended to sustain the objection to the question propounded to the witness or to the offer by the defendant to show that the defendant had a bad disease. In *Packard* v. *Bergen Neck Railway Co., 25 Vroom* 229, 553, Chief Justice Beasley's comment that "this bill of exceptions was *multiform* when it should have been *single,* and was *general* when it should have been *specific,*" fits the case in hand. And on the review of the Packard case, Mr. Justice (now Chancellor) Magie, delivering the opinion of this court, said: "Obviously such an exception, while logically asserting the error of each of the propositions of law involved, is considered unavailable, because the objection has not been leveled at a specific and distinct error, and the attention of the judge has not been called to the precise point of the objection."

But if we should pass to the consideration of the merits of these offers, as if both had been duly overruled under exceptions properly taken, they will be found to lack legality. If their object was to show a particular fact against the plaintiff's character for chastity, they cannot be supported upon the defendant's plea of justification, because there was no proposal, not even a suggestion, that they would be followed by other testimony showing that the imputed disease was contracted by the plaintiff out of lawful wedlock, or by illicit intercourse with another than her husband. The rejection of testimony as to a solitary circumstance, which is incompetent unless other testimony be supplied, is not, in the absence of any offer to supply it, legal error. The proffered fact, standing alone, was as consistent with the plaintiff's chastity and morality as with the want of it.

Nor were these offers admissible in mitigation of damages.

It has been the accepted law of this state ever since *Sayre* v. *Sayre, 1 Dutcher* 235, that in actions for slander only evidence of the plaintiff's *general bad* character was admissible. Chief Justice Green considered it not open to question that "evidence of particular facts is excluded. * * * Where the evidence is introduced for the purpose of miti-

gating damages, on the ground that the plaintiff's reputation has sustained but little injury, the plaintiff's *general character* alone should form the subject of examination. The question is not what may have been his character in any *given particular,* but what was the estimation in which he was held among his neighbors and acquaintances." See, also, citations *Steph. Dig. Ev. (Beer's New Jersey ed.,* 1904) 303.

The law assumes a good character to be of value to every man. It *presumes* that every man is of *good* name and fame until the contrary is proved. The trial court in its charge to the jury stated the law differently—deprived plaintiff of the benefit of this presumption—and fell into error on this subject, the words used being: "The law does not presume it (plaintiff's reputation) was bad or was good; there is no presumption of law." Of this, however, the defendant, in whose favor the mistaken direction stands on the record, cannot take advantage, and has not complained.

The errors assigned upon the refusal of the court to nonsuit, as well as to direct a verdict for the defendant, are not well taken. If the evidence offered by the plaintiff was entitled to credence, the cause was properly advanced to the jury-box, and the direction of a verdict for the defendant became legally unwarrantable. There is strong reason to infer from the evidence that the utterances by defendant concerning the plaintiff proceeded not from honest motives, but from malice and a desire for revenge against her. That motive having been displayed by him on a prior occasion, when he had made, if the plaintiff is to be believed (and that was for the jury), improper proposals to her, which she rejected, followed by a threat from him that he "would get even with" her. The defendant's denial in his testimony of this charge does not, under his subsequent admissions, appear to carry weight with it. His cross-examination, in highly important respects, discredited his truth and accuracy. For instance, he swore, on his main examination, that the plaintiff's child (the birth of which resulted in the action of the township committee, and was the foundation of his remarks in the committee-room respecting the plaintiff), was born

five months *after* the husband's death. On his cross-exami-
nation he was apparently forced to contradict himself, and
to admit that the child was born *before* the husband's death,
and that he knew this because he was at the house several
times before the husband died and knew of and reported its
birth to the committee. He also admitted that the plaintiff
herself had not been supported by the township. She applied
for her children *only,* and they were the recipients of public
help. This situation seems to have escaped the attention of
the trial court. That they, or any of them, had been born
bastards was not established in evidence by the defendant,
nor was there any testimony tending to prove such a charge.
No order of filiation had been applied for and no proceed-
ings to settle their paternity had been had or taken. They
had been born during a presumptively lawful wedlock, and
even if their legitimacy had been at all doubtful it was no
concern either of the defendant or of the township committee.
His duties as an overseer of the poor are laid down by law.
*Gen. Stat., pp.* 2505–2509. When persons applied to him
for relief it became his duty to apply to a justice of the peace
of the township, and jointly with him "inquire into the state
and circumstances" of the person so applying, and after ob-
taining the justice's order for relief in writing, directing the
allowances in the form required by the statute, to obey such
order. The legal duty of the township committee was to
pay the amount of the relief out of the funds raised for the
relief of the poor, &c. *Gen. Stat., p.* 2518. Neither the
duties of the overseer nor of the township committee con-
templated, much less compelled him, or them, to inquire into
the chastity or attempt to regulate the moral character of the
mother of such children. Their communications concerning
her, whether made *in* or *out* of the committee-room, were
not privileged. The "state and circumstances" of the *chil-
dren-applicants* for relief *alone* were the proper subjects of
consideration by the authorities. The more immoral and
shiftless the parents, the more need of kind help and care
for their children. The conduct of the defendant in uttering
these malicious falsehoods (as the jury have found them to

have been) concerning the character of this woman, whose necessities forced her, for the sake of her children, to come in contact with him, was, under the evidence, without the slightest justification in law. The defendant's motions under consideration were properly denied by the trial court, and the judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, REED, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL. 15.

*For reversal*—None.