(May 1, 1925.)

L. B. SWEETLAND, Appellant, v. OAKLEY STATE BANK, a Corporation, and E. B. WHITE, Sheriff of Jerome County, Respondents.

[236 Pac. 538.]

FRAUDULENT CONVEYANCES — IMMEDIATE DELIVERY AND CONTINUED CHANGE OF POSSESSION — STATUTE — EVIDENCE—NONSUIT—FINANCIAL STANDING OF VENDOR—CREDITOR OF VENDOR—PARTIES COMPLAINING.

1. Under C. S., sec. 5434, an alleged sale of personal property not accompanied by an immediate delivery and continued change

---

Publisher's Note.

1. Sufficient change of possession as against creditors and subsequent purchasers, see note in 97 **Am. Dec.** 340.

of possession is conclusively presumed to be fraudulent and void as against creditors of the vendor.

2. Under C. S., sec. 5434, where the facts are undisputed it is for the court to determine as a question of law whether there has been an immediate delivery and continued change of possession.

3. Where there is no substantial evidence from which the jury may draw the legitimate inference that there has been an immediate delivery and continued change of possession, the court is justified in granting a nonsuit.

4. To satisfy the statute there must be both an immediate delivery and a continued change of possession.

5. It is permissible to show the financial circumstances of the vendor at the time of such alleged transfer.

6. It is not only permissible but necessary to show that the party complaining of the sale is a creditor of the vendor.

APPEAL from the District Court of the Eleventh Judicial District, for Jerome County. Hon. William A. Babcock, Judge.

Suit to recover personal property. Instructed verdict for defendants. *Judgment affirmed.*

Bothwell & Chapman, for Appellant.

There is no fixed rule in law as a test for ascertaining the meaning of the terms "immediate delivery" and "actual possession" as used in C. S., sec. 5434, but the determination thereof is purely and solely a question of fact for the jury in each particular case from all of the facts and circumstances which would throw any light on the transaction. The court could not properly withdraw these questions from the jury. (*Simons v. Daly,* 9 Ida. 87, 72 Pac. 507; *Hazard v. Cole,* 1 Ida. 276; *Cahoon v. Marshall,* 25 Cal. 198; *Bell v. McClellan,* 67 Cal. 283, 7 Pac. 699; *Gould v. Huntley,* 73 Cal. 399, 15 Pac. 24.)

The facts in evidence sufficiently and conclusively constitute a delivery and change of possession of the automobile within the meaning of C. S., sec. 5434. (*Bunting v. Salz,* 3 Cal. Unrep. 193, 22 Pac. 1132; *Williams v. Lerch,* 56 Cal. 330; *Morgan v. Miller,* 62 Cal. 492; *Cameron v. Calberg,* 3 Cal. Unrep. 637, 31 Pac. 530; *Henderson v. Hart,* 122 Cal.

332, 54 Pac. 1110; *Sydnor v. Gee,* 4 Leigh (Va.), 535; *Trimble v. Hunt,* 169 Ill. App. 259; *Goad v. Wellendorf,* 67 Colo. 40, 185 Pac. 470; *Buckley v. Jennings,* 95 Vt. 205, 114 Atl. 40.)

A motion for a directed verdict and the giving of such instruction has the same effect as the making and sustaining of a motion for a nonsuit, and admits the truth of the plaintiff's evidence, and every inference of fact that can be legitimately drawn therefrom, and is to the effect that there is no evidence supporting the plaintiff's case; and where there is evidence supporting the complaint, as there is in this case, the giving of such instruction is erroneous. (*Keane v. Pittsburg Lead Min. Co.,* 17 Ida. 179, 105 Pac. 60; *McAlinden v. St. Maries Hospital Assn.,* 28 Ida. 657, Ann. Cas. 1918A, 380, 156 Pac. 115; *Tipsword v. Potter,* 31 Ida. 509, 174 Pac. 133, 6 A. L. R. 527; *McKenna v. Grunbaum,* 33 Ida. 46, 190 Pac. 919; *Dellwo v. Peterson,* 32 Ida. 172, 180 Pac. 167; 38 Cyc. 1565, 1567, 1576.)

Ray Agee, for Respondents.

Under the provisions of C. S., sec. 5434, every transfer of personal property is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession. (27 C. J. 577, 578, and notes 57–59; *Guthrie v. Carney,* 19 Cal. App. 144, 124 Pac. 1045; *Bassinger v. Spangler,* 9 Colo. 175, 10 Pac. 809; *Bartell v. Griffin,* 47 Colo. 569, 108 Pac. 171; *Chavez v. Haynie* (Colo.), 225 Pac. 852; *Harkness v. Smith,* 3 Ida. 221, 28 Pac. 423; *Ahlstrom v. Tage,* 31 Ida. 459, 174 Pac. 605.)

In an action of this kind, where the material facts are undisputed, it is for the court to determine as a question of law whether the facts show such "actual and continued change of possession" as will render the transfer of the property valid as against the creditors of the seller. (27 C. J.,

841, and note 17; *Israel v. Day,* 41 Colo. 52, 92 Pac. 698; *Jacobson v. Bunker Hill & S. Min. & Con. Co.,* 3 Ida. 126, 28 Pac. 396; *Walters v. Ratliff,* 10 Okl. 262, 61 Pac. 1070; *Davis v. Patterson,* 69 Colo. 226, 193 Pac. 662; *Bassinger v. Spangler,* 9 Colo. 175, 10 Pac. 809; *Hallet v. Parrish,* 5 Ida. 496, 51 Pac. 109; *Bell v. McClellan,* 67 Cal. 283, 7 Pac. 699.)

When the property is susceptible of it, there must be an actual, open, visible and notorious change of possession, indicated by such outward and visible signs as give notice to all the world that title to the property has passed to the purchaser, and that the vendor's control over it has ceased. The change must be open and so long continued as to indicate to the world at large that there has been a change of ownership. A constructive change of possession will not suffice. (27 C. J. 579, 580, and notes 74–76; *Johnson v. Sage,* 4 Ida. 758, 44 Pac. 641; *Brown v. Herrick,* 34 Ida. 171, 200 Pac. 117; *Goad v. Corrington,* 61 Colo. 427, 158 Pac. 284; *Davis v. Patterson,* 69 Colo. 226, 193 Pac. 662; *Israel v. Day,* 41 Colo. 52, 92 Pac. 698; *Pearce v. Boggs,* 99 Cal. 340, 33 Pac. 906.)

It is the duty of the trial court to direct a verdict, unless there be substantial evidence tending to prove in favor of plaintiff all the controverted facts necessary to establish his case. (*Blackwell v. Kercheval,* 29 Ida. 473, 160 Pac. 741; *In re Sharon's Estate,* 179 Cal. 447, 177 Pac. 283; *In re Baldwin's Estate,* 162 Cal. 471, 123 Pac. 267; *Young v. Washington Water Power Co.,* 39 Ida. 539, 228 Pac. 323; *Kohn v. National Film Corp. of America,* 60 Cal. App. 198, 212 Pac. 207; *In re Wasson,* 54 Cal. App. 269, 201 Pac. 793; *McIntyre v. Northern Pac. Ry.,* 56 Mont. 43, 180 Pac. 971; *Dickerson v. Incorporated Town of Eldorado,* 64 Okl. 142, 166 Pac. 708; 38 Cyc. 1565–1567, and notes 83–90, 1571, and note 16.)

GIVENS, J.—Sweetland claiming to be the owner, sued to recover the possession of an automobile attached by the sheriff in a suit by the Oakley State Bank against Worthington, later sold by the sheriff to said bank. On the trial before a jury, at the conclusion of defendant's case the

court instructed the jury to return a verdict against plaintiff on the ground that at the time of an alleged sale of the car from Worthington to Sweetland there had been no immediate delivery and continued change of possession of the car as prescribed by C. S., sec. 5434. A bill of sale, dated December 7th or 8th, drawn by a third party who did not testify was introduced in evidence.

With regard to the sale Worthington testified:

"I owed Sweetland $300. I had a horse of his and brought it up here in the spring of 1920. I allowed him $200 for the horse. I didn't want the car and he did, so I said to Mr. Sweetland, on the night of the 3d of December, 1920, at Hazelton—"

"So I said, 'Give me $500 more and you can have the car.' He said, 'All right,' and gave me a check for $500. I had the car and wanted to use it until I left Idaho. He said, 'All right.' I stripped a gear and couldn't take the car to him before I left. I went back there again and roads were so bad I couldn't take it down to him. He said, 'Arrange to store it,' and I did, at the garage in Hazelton, at $6.00 a month. He was to call for it."

And later:

"Q. Where did you deliver the automobile in question to L. B. Sweetland?

"A. I met him and showed him the car. When I left Idaho [The evidence shows that Worthington was going and did go to Canada] I left the car in the garage at Hazelton for him to get it.

"Q. . . . . state whether or not you informed or advised the person in charge of such garage at the time the automobile was left there as to the ownership of such car.

"A. . . . . I left it in Hazelton at a garage, and I told the garageman there—Atherton, I think his name was—to hold the car for Sweetland till he called for it.

"Q. . . . . state what information or advice respecting the ownership of the automobile you gave to such garage.

"A. Just to keep the car for Sweetland—that is, at Hazelton."

Sweetland testified that on December 7th or 8th, when he and Worthington were alone together, he got into the car and drove it for about one-half mile and that the car was not taken by him to his home because of the bad condition of the roads. The testimony shows that after the claimed sale on December 3d or 4th, or 7th or 8th, Worthington continued to use the car in the same manner as before, that he bought a tire at Burley which was charged to him, and that during the same time his daughter used the car and that he having stripped the gears, new ones were installed in the Hazelton garage, the parts being secured and paid for by Worthington. No taxes were paid on the car and the license was not changed from Worthington to Sweetland. Atherton did not testify and Freeman, the owner of the garage at Hazelton, testified as follows:

"Q. Who brought that car into your garage?

"A. James Worthington.

"Q. To whom did he deliver it?

"A. To myself.

"Q. Did he state anything to you at the time he delivered that car to you?

"A. Why, he said he intended to leave it down here to Jerome on storage through the winter, that he was going to Canada, and he said as it was broke down he just as well leave it there for me to fix up and let it stay there.

"Q. Did James Worthington, at the time he delivered that car to you, or at any other time, make any mention that the plaintiff Sweetland, in this action, was the owner of the car?

"A. No, sir.

"Q. Did he authorize or direct you to turn it over to Mr. Sweetland?

"A. No, sir.

"Q. Did Mr. Sweetland ever tell you that he owned that car?

"A. Yes, sir.

"Q. About when?

"A. I couldn't give you the date on that, but it must have been some time along in June, 1921.

"Q. Was it before—or, were you served with the attachment papers in this action?

"A. Yes, sir.

"Q. Was it before or after those papers were served? .

"A. Afterwards."

Sweetland did not claim the car till long after the levy, though he explains this by saying he did not know of the suit on account of the sheriff misinforming him as to the case and the attachment pending.

In *Trimble v. Hunt,* 169 Ill. App. 259, one Trimble claimed to have purchased a piano from Mrs. McCormick, the piano then being at the home of Mrs. Zimmerman, where it had been taken for Mrs. McCormick by Trimble. After the purchase, Trimble asked Mrs. Zimmerman, the piano not having been moved, if she had learned to play the piano and she said no; that he told her she could keep it until the first of the year and that he would then let her know if she could keep it longer or not and she said all right. The court says, "there is an exception to the rule requiring actual delivery in a case where the property when sold is in the possession of a bailee or custodian of the vendor, and as we view this case this is the only question to determine," and held there was no delivery or change of possession. Such exception could not apply in the instant case because if the sale was made it took place either the 3d or 4th, or 7th or 8th, of December and prior to the time the garageman at Hazelton was told to keep it for Sweetland. At that time the garage owner was not bailee or custodian for the vendor but must have been considered, if later bailee, as custodian of the vendee, hired as such by Worthington for Sweetland.

*Petrie v. Wyman,* 35 N. D. 126, 159 N. W. 616, was decided upon a statute making the sale where the vendor retains possession of the goods or chattels merely presumptively fraudulent, while under our statute such a sale is conclusively presumed fraudulent and therefore void. The rule is thus stated in *Veum v. Stefferud* (N. D.), 196 N. W. 104.

"The change of possession contemplated in section 7221, *supra*, and necessary to avoid the presumption of fraud, must generally and ordinarily be open and unequivocal and must have the usual characteristics and indications of ownership. It should be such as to indicate to the world the claims of the new owner." The possession should be continuous, though it need not continue indefinitely; that is, there should not be present an intention to return the property. It must be substantial, and not merely formal. (*Petrie v. Wyman,* 35 N. D. 126, 159 N. W. 616; 20 Cyc. 545; *Stevens v. Irwin,* 15 Cal. 503, 76 Am. Dec. 500; *O'Gara v. Lowry,* 5 Mont. 427, 5 Pac. 583; *Walters v. Ratliff,* 10 Okl. 262, 61 Pac. 1070; *Topping v. Lynch,* 25 N. Y. Super. Ct. 484; *Guthrie v. Carney,* 19 Cal. App. 144, 124 Pac. 1045; *O'Brien v. Ballou,* 116 Cal. 318, 48 Pac. 130; *Roseberg v. Ross,* 6 Cal. App. 755, 93 Pac. 284; see, also, *McDonald v. Fitzgerald,* 42 N. D. 133, 171 N. W. 879.)"

*Beintema v. Van Zante,* 197 Iowa, 117, 196 N. W. 941, was decided under a statute which provided that no sale of personal property, where the vendor retains actual possession, is valid unless a written instrument is executed, acknowledged and recorded, and we have no such statute.

In *Tennant v. Cline,* 47 Cal. App. 461, 190 Pac. 1065, it was claimed that an automobile was sold by a husband to his wife, she having secured a divorce though the parties continued to reside in the same house; both used the automobile the same as they did before the sale or divorce, and the court held that it was for a jury to determine from the facts whether there had been a transfer and a change of possession of the property. That case, however, may be distinguished because of the fact that the husband did use the car; here Sweetland admits that the car was never in his possession and he never used it except on a short drive,—in other words, in the case above, possession was predicated upon use not upon nonuse.

In *Cronan Automotive Implement Co. v. Sides* (Mo. App.), 254 S. W. 418, the defendant at the time of the delivery of the bill of sale turned the keys of the automobiles

over to the purchasers, who thereupon took possession of the cars and removed them to another garage and paid storage on the cars; the court held that the change and delivery of the cars was open and visible, such as to apprise the public that a change in ownership had taken place and to authorize and present a question for the jury; here there was no open, notorious and visible change of possession so far as third parties could discern.

*Wooly v. Crescent Automobile Co.,* 83 N. J. L. 244, 83 Atl. 876, is not a case under a statute similar to ours but depends upon the good faith of the transfer and not upon the immediate delivery and continued change of possession.

*Goad v. Wellendorf,* 67 Colo. 40, 185 Pac. 470, distinguishes itself from *Goad v. Corrington,* 61 Colo. 427, 158 Pac. 284, where the car was kept in a public garage at the time of the sale and continued to be kept there after the sale and the former owners used it after the sale precisely the same as before and no one knew of the change of possession, there being thus no change of possession, the court holding in the Wellendorf case that there was an immediate delivery and continued change of possession on the ground that the car was taken and placed in a dairy barn which was under the care of the vendee and that the sale was made known to parties working on the ranch with Wellendorf and that the vendor secured permission to use the car which was confirmed by a third party. Thus the Wellendorf case is likewise distinguished from the case at bar. *Goad v. Corrington* is therefore authority for the position that, conceding Atherton or Freeman was told by Worthington that the car had been sold to Sweetland, although Worthington does not claim that he so told him, or if it might be concluded from the language or circumstances that such was the case, such would not be sufficient to show a delivery and continued change of possession. The Corrington case contains this correct statement of the law:

" 'The vendee must take actual possession and the possession must be open, notorious, and unequivocal, such as to apprise the community, or those who are accustomed to deal

with the party, that the goods have changed hands, and that the title has passed out of the seller into the purchaser.' (*Cook v. Mann,* 6 Colo. 21.)''

In *Cameron v. Calberg,* 3 Cal. Unrep. 637, 31 Pac. 530, the vendee received a bill of sale and went to get the mare, the subject of the sale, out of the pasture of the third party, who not being at home, the mare was not then taken, but the vendee made arrangements to have her removed to another pasture and later did drive her to the other pasture and left her there subject to his order, and the man in charge of the pasture never heard of or recognized the vendor or anyone else in the matter.

In *Bunting v. Salz,* 3 Cal. Unrep. 193, 22 Pac. 1132, there was a delivery through the agents of one of the parties to the sale.

In *Henderson v. Hart,* 122 Cal. 332, 54 Pac. 1110, certain hogs, the subject of the sale, were transferred from one pasture to another and the court further states, without setting it forth, that there was evidence of a previous delivery and continued change of possession.

In *Levy v. Scott,* 115 Cal. 39, 46 Pac. 892, a person bought a stock of goods in a city other than in which he resided and it is shown that the former owner left and the vendee entered into actual possession and custody, new signs were painted, insurance policies were assigned to him and he took out a trader's license in his own name and instructed the clerks as to the management of the business, the court saying:

''The possession must be continuous; not taken to be surrendered back again; not formal but substantial. But it need not necessarily continue indefinitely when it is *bona fide* and openly done, and is kept for such a length of time as to give general advertisement to the status of the property, and the claim to it by the vendee.''

In *Guthrie v. Carney,* 19 Cal. App. 144, 124 Pac. 1045, on the sale of wines and liquors where a bill of sale was executed, the key to the barn in which the property was stored was delivered, the barn pointed out to the vendee but the vendee

did not, at the time the property was shown him nor at any time prior to the execution, make an inventory of the same and the property remained in the barn, it was held that there was no immediate delivery and no change of possession sufficient to satisfy the statute, the court saying the delivery of the key was merely constructive change of possession whereas the change must be open, visible, apparent and actual and not merely constructive, and the court further states:

"Verbal or written notice of a sale of personal property given to an individual or to any number of individuals unaccompanied by an immediate and actual change in the status of the property is not equivalent to delivery and possession." (*Hoffman v. Owens,* 31 Nev. 481, Ann. Cas. 1912A, 603, 103 Pac. 414, 104 Pac. 241.)

In *Freedman v. Avery,* 89 Conn. 439, 94 Atl. 969, upon an alleged sale of certain lumber, the vendee went to the lot, counted the lumber, affixed one of his business cards to each pile and on the pile nearest the entrance to the lot tacked a paper on which it was written that the lumber belonged to him; later he tried several times to sell this lumber and authorized a lumber broker to sell the same but did not pay any taxes upon it, and the court held that there was no continued change of possession, which must be actual and visible, holding that to the world all things remained unchanged and that the apparently unchanged ownership was a constant denial of the plaintiff's statements of ownership, "and, as a matter of law, bore them down." The court further says that it is not only the ownership that must be proved but the all-important change of possession which must be open and continued.

In *Mead v. Blurton* (Mo. App.), 189 S. W. 637, there was evidence from different parties that the vendee was in actual possession of the automobile in question, drove it and exercised dominion over it, which thus presented evidence sufficient to sustain the judgment in his favor.

In *Bowersox v. Weigle & Myers,* 77 Pa. Sup. Ct. 367, one Wolfgang had been for some time the owner of an automo-

bile and in daily use of it; he owed a bill of merchandise to
Bowersox, July 31, 1918; they met and Wolfgang upon re-
quest stated that he could not pay the account but would
give an automobile for a fixed value; that afternoon he ran
the car in the barn of Bowersox and later Wolfgang leased
the car for $70 a month and used it; subsequently the car
was levied on under a judgment against Wolfgang under the
same contention as herein.   The court said:

"It is indispensable that the vendee assume such control
of the property as ought reasonably to indicate a change of
ownership. . . . . In the case of property readily susceptible
of actual delivery there must be not only a delivery, but a
continuing possession in the vendee for such time as would
reasonably give notice to all concerned of the change of
ownership. . . . . Where the possession is concurrent or the
vendor appears to occupy the same relation to the property
as he did before, the transfer is void. . . . The possession
acquired by plaintiff consisted of the putting of the automo-
bile in his barn by Wolfgang where it remained from the
latter part of the afternoon of one day until the morning of
the next day when the lease was executed at which time
Wolfgang took the car away.   The license tag on the car
while Wolfgang owned it remained on it.   No change of ap-
pearance of any kind gave notice that he was no longer the
owner.   Nothing in the evidence gives any intimation that
any other parties interested or the public had any means of
knowing that the car was sold; as to them it was a secret
transaction. . . . . A temporary and early return of the
property into the hands of the vendor leaves it still ex-
posed to the execution of creditors. . . . . A change of pos-
session merely for a single night or day could not have the
effect to advise the public of a change of ownership in the
property. . . . . It is not apparent from the evidence that
the transfer of the property to Bowersox was any more
notorious in the morning than it was the night before."

So in the case at bar it does not appear that on the 13th
of December, when the car was left at Hazelton by Worth-
ington, that the sale was any more open or notorious than

before or that there was any more continued change of possession afterwards as between Worthington and Sweetland, than there was prior to December 3d.

In *Ahlstrom v. Tage,* 31 Ida. 459, 174 Pac. 605, it was claimed that a certain hack, originally purchased by one Ahlstrom, was later conveyed to his wife as her separate property. The court held that Ahlstrom retained possession of the hack and therefore the sale was void. (*Brown v. Herrick,* 34 Ida. 171, 200 Pac. 117.)

In *Rapple v. Hughes,* 10 Ida. 338, 77 Pac. 722, the vendee took a cream-separator, the subject of the sale, from the vendor's place to his own room and even though it was in another house belonging to the vendor there was at least an immediate delivery and a continued change of possession so far as the immediate dominion over the subject of the sale was concerned and as between the parties, and there must be both a delivery and a continued change of possession.

In *Simons v. Daly,* 9 Ida. 87, 72 Pac. 507, upon the sale of a stock of goods, new signs were made, a bill of sale was made, keys to the store and all books of account were turned over, balance in the bank transferred and the business was conducted under a different name, the stationery was changed and checks and orders were signed in the name of the new firm, all of which clearly distinguished it from the case at bar, it being necessary, as therein stated, to consider each case according to the facts presented. The conclusion reached in this case is not in conflict with the recent case of *Powelson v. Kinney,* decided March 27, 1925 (*ante,* p. 565, 234 Pac. 935), because there the creditor had actual notice that the vendee had purchased the building in question and there was a substantial conflict in the evidence as to the occupancy of the building. (*Cochran Grocery Co. v. Harris,* 28 Okl. 715, 116 Pac. 185.)

While it is true that a motion for a directed verdict, and the giving of such instruction, has the same effect as a nonsuit, admits the truth of plaintiff's evidence and every legitimate inference that can be drawn therefrom, and that a

nonsuit should not be given where there is evidence sufficient to support the complaint, or if there is a conflict and evidence, if uncontradicted, on one side or the other would be sufficient to support the verdict (*Coulson v. Aberdeen-Spring Canal Co.*, 39 Ida. 320, 227 Pac. 29), nevertheless the evidence must be substantial and a mere scintilla is not sufficient to present any issue of fact.

"A directed verdict is proper only when there is no substantial evidence tending to prove, in favor of the party upon whom the burden rests, all the controverted facts necessary to establish his case; but whenever, upon the whole evidence, the court would be compelled to set aside a finding as unsupported by the evidence, it should direct a verdict." (*In re Wasson*, 54 Cal. App. 269, 201 Pac. 793.)

"Briefly stated, such direction is not authorized where there is a conflict in the evidence of a substantial kind. A bare conflict, created by what is sometimes termed a 'scintilla' of evidence, is not substantial within the interpretation of the decisions. The rule is precisely the same as that applied where a motion for judgment of nonsuit is under consideration. On such a motion it must appear that the evidence utterly fails as to essentials necessary to be proved before an order granting the same will be allowed to stand." (*Kohn v. National Film Corp. of America*, 60 Cal. App. 198, 212 Pac. 207, and cases cited.)

"It is a settled rule of law regarding trial by jury that in a proper case the court has full power to direct the jury to render a verdict. This power exists in favor of the defendant where there is no substantial evidence tending to prove all the controverted facts necessary to establish the plaintiff's case. It is not necessary that there should be an absence of conflict in the evidence. To deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one. There are numerous decisions to this effect." (*In re Sharon's Estate*, 179 Cal. 447, 177 Pac. 283, and cases cited.)

Assuming, therefore, that the testimony of Worthington as to the statement made by him at the time he took the car

into the garage at Hazelton is true, which must be done when considering a nonsuit, there is no conflict, substantial or otherwise, and the question becomes merely one of the construction to be placed upon, and the conclusion to be drawn from, his statements; in other words, would the jury have been justified in concluding that the car belonged to Worthington and not Sweetland, because Worthington left the car in the garage at Hazelton and said to keep it for Sweetland, and that Sweetland would call for it, and considering all the other evidence most favorable to plaintiff as true Worthington did not state that he told Atherton he had sold the car to Sweetland. He did not state that Sweetland owned the car; he merely told Atherton to keep the car and that he (Sweetland) would get it. There is no conflict as to what Worthington said because Worthington did not say that he told Freeman anything and Atherton did not testify. The burden of proof was upon appellant and this case falls clearly within the statement in *Young v. Washington Water Power Co.*, 39 Ida. 539, 228 Pac. 323, where this court said:

"The most that can be said for this evidence is that it perhaps creates a suspicion (that the car belonged to Sweetland) . . . . but it does not support a reasonable inference . . . . (of such fact)."

The court there concluding that the trial court did not err in granting a nonsuit. (*McIntyre v. Northern Pac. Ry. Co.*, 56 Mont. 43, 180 Pac. 971.)

Appellant also complains of the action of the court in admitting, over his objection, the testimony of respondent's witness Judd, a stranger to the action, to the effect that Worthington was indebted to him, in the absence of either allegation or proof that appellant ever had knowledge thereof or of such fact. This evidence was admissible. (27 C. J. 806–812.)

Respondents were allowed, over appellant's objection, to show by one Ghrosky that Worthington owed the Oakley State Bank, in the absence of either allegation or proof that appellants had knowledge thereof. This evidence was

admissible for two purposes; first, to show that the Oakley State Bank was a creditor (27 C. J. 796), and also, for the same reason, that the evidence of Judd, *supra,* was admissible.

Appellant urges as error the trial court's refusal of his offer to show arrangements for storage in a garage which was as follows: ''It is our purpose to show by this witness [Kelson Newman] that Mr. Sweetland has secured storage capacity in his garage.'' This offer did not show that the storage was for this particular car or when in December such arrangements were made; the offer, therefore, was not sufficiently explicit, direct or connected with the issues herein to render its rejection reversible error. (38 Cyc. 1322, 1323; Thompson on Trial, sec. 648, p. 625; *Pier v. Speer,* 73 N. J. L. 633, 64 Atl. 161; *Borden v. Lynch,* 34 Mont. 503, 87 Pac. 609; *Oldham v. Ramsner,* 149 Cal. 540, 87 Pac. 18; Wigmore, Evidence, sec. 17; *Harrild v. Spokane School Dist.,* 112 Wash. 266, 192 Pac. 1, 19 A. L. R. 811; *Royal Ins. Co. v. Caledonian Ins. Co.,* 182 Cal. 219, 187 Pac. 748.)

The action of the trial court is therefore sustained, and it is so ordered.

Costs to respondents.

Wm. E. Lee, Budge and Taylor, JJ., concur.