122  547
126  223

[Sac. No. 441.  Department One.—December 5, 1898.]

MARY IVES CROCKER et al., Appellants, v. THOMAS CUN-
NINGHAM, Respondent.

CROPPING CONTRACT—DIVISION OF GRAIN—ATTACHMENT AGAINST CROPPER.
Under a cropping contract by the terms of which the entire
crop of grain raised was to belong to the owner of the land
until division should be made, and one-half of the crop was
to be segregated ·on the ground, to be given to the cropper at
the conclusion of the threshing and sacking of the crop, where
it appeared that all of the crop, excepting one stack, had been
threshed and sacked, and one-half thereof delivered by the
cropper to the order of the owner of the land, and the remain-
ing half remained in the field, such remaining half of the
threshed and sacked crop is to be deemed the property of the
cropper, and is subject to attachment by his creditor.

ID.—CONSTRUCTION OF CONTRACT—DIVISION OF THRESHED PART OF CROP.—
Under the provision in the contract that one-half of the crop
was to be segregated on the ground for the cropper, at the
conclusion of the threshing and sacking of the crop, the par-
ties could have postponed the division and segregation until the
whole crop was threshed and sacked; but they were not re-
quired to do so, and might divide the threshed and sacked por-
tion thereof, though another portion thereof was still unthreshed.

ID.—BILL OF SALE—CHANGE OF POSSESSION.—A bill of sale made by the
cropper to the owner of the land for a valuable consideration,
but without any act purporting to be a delivery or change of
possession of the sacks segregated on the ground to the crop-
per, could not affect the right of the creditor of the cropper
to attach the same.

ID.—SECURITY FOR ADVANCES—WAIVER OF RIGHT.—A provision in the
contract that the owner of the land might retain possession
of the cropper's half of the crop as security for advances, can-
not be enforced against the claims of the creditors of the crop-
per, while such half remains in the cropper's possession; and
the division and segregation to him of his half of the crop is
to be regarded as a surrender of the right  to retain the same
as security.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. Joseph H. Budd, Judge.

The facts are stated in the opinion of the court.

Woods & Levinsky, A. L. Rhodes, and Thomas H. Breeze, for Appellants.

James A. Louttit, and W. W. Middlecoff, for Respondent.

HARRISON, J.—Action of claim and delivery to recover from defendant, as sheriff of the county of San Joaquin, certain grain held by him under a writ of attachment against one John Enos.

By the terms of an agreement between the plaintiffs and Enos, commonly called a cropping contract, Enos agreed to perform the labor required for the cultivation in grain during the year ending September, 1896, of a tract of land on Roberts Island, in San Joaquin county, belonging to the plaintiffs, and at the maturity of the crop to harvest and sack the same, and haul and deliver one-half thereof at such place on the river bank as the plaintiffs might direct. In consideration thereof the plaintiffs agreed to give to Enos one-half of the crop, the said one-half to be segregated on the ground at the conclusion of the threshing and sacking of the grain. The agreement also contained a provision that the entire crop should remain the exclusive property of the plaintiffs until said one-half part should have been delivered to Enos in payment and satisfaction as aforesaid. During that year Enos raised upon the land the grain in controversy, with other grain, and on the 23d of July all of the grain, with the exception of one stack of wheat, had been threshed and sacked, and one-half of it had been hauled by him to Frewert's Landing upon the river bank for the plaintiffs, and under their direction, and the sacks were there marked "McLaughlin Company." (The plaintiffs constitute the McLaughlin Company.) On that day there was remaining in the field the one thousand and fifty-six sacks of barley and one hundred and eighty-three sacks of wheat in controversy herein, together with the above stack of unthreshed wheat, and the same was attached by the defendant, who was the sheriff of that county, as the property of John Enos, under a writ of attachment issued out of the superior court of that

county in an action against him. The defendant had received a writ of attachment against Enos on the 18th day of July, and by virtue thereof had taken the grain into his possession on that day, and on the 23d of July, while it was still in his possession, he made a levy upon it by virtue of the writ then issued, and the levy under the prior writ was subsequently released. At the trial, the jury, under the directions of the court, rendered a verdict in favor of the plaintiffs for the wheat that was in the unthreshed stack, and upon the evidence before them awarded to the defendant the right of possession for the one thousand and fifty-six sacks of barley and the one hundred and eighty-three sacks of wheat. The plaintiffs have appealed from the judgment entered upon this portion of the verdict, and from an order denying their motion for a new trial.

From the evidence before the jury they were authorized to find that at the time the defendant levied upon the grain there had been a division and segregation of that which had been threshed and sacked, and that the sacks of wheat and barley then in the field and taken by the defendant were the property of Enos, and consequently subject to seizure under the writ of attachment against him. By the terms of the contract the o re-half of the crop which Enos was to have was "to be segregated on the ground" at the conclusion of the threshing and sacking of the crop. Under this provision the parties could have postponed the division and segregation until the whole of the crops were ready for division, but they were not required to do so. The crops might mature at different times in the year, and it was reasonable that they should divide the different crops from time to time as they were sacked and ready for division, rather than postpone the division until the entire products had been harvested. If they so desired, it was competent for them to make such division; and it was shown that at the time the defendant levied the writs an actual division had been made of all except the unthreshed stack of wheat. The provision in the contract that Enos was to haul and deliver "the remaining one-half of the crop retained by the plaintiffs" to their order at such point on the river bank as they should direct, implies that the division and segregation was to be made before he was to haul their half of the crop, as does also the use of the phrase "the remaining one-half retained

by the plaintiffs." There would be no "remaining" half until after the crop had been divided into halves, and one-half had been set apart; and designating the remaining half as "retained" by the plaintiffs carries with it the idea that they had parted with the other half. The fact that at this time Enos had hauled and delivered one-half of the sacked grain to the order of the plaintiffs at Frewert's Landing leads to the conclusion that this portion of the crop had been divided, and that the other half had been segregated to Enos "on the ground," and was his property and subject to seizure by the defendant. The plaintiffs could not claim that after such division and delivery to them of their half of the crop, they would have had a right to demand from Enos a delivery to them of any portion of the half which had been segregated to him and left on the ground.

On the 17th of July Enos made a bill of sale to the plaintiffs of his interest in the grain, in consideration of the sum of one hundred and fifty dollars then received by him from them. This transaction was had at Stockton, and the grain was at that time in the sacks upon the ground at Roberts Island. There was no act between them purporting to be a delivery of the grain, nor was there any change of possession from Enos to the plaintiffs, but the grain remained upon the ground in the same condition until it was taken by the defendant upon the next day. As there was no change of possession or delivery of the grain, the right of the creditors of Enos to attach it in an action against him was not affected by this transaction (Civ. Code, sec. 3440), and, consequently, the right of the defendant as the attaching officer to the possession of the grain is superior to that of the plaintiffs.

It was also provided in the contract between the plaintiffs and Enos that they might retain possession of Enos' half of the crops until they should have been fully paid the amount of any loans or advances they should make to him; and evidence was introduced on their behalf tending to show that at the time the defendant took the grain Enos was indebted to them for moneys advanced to him. But the principles which governed the right of the creditors of Enos to attach the grain in his possession, after he had made the bill of sale to the plaintiffs, are equally applicable under this provision.

The plaintiffs' claim to hold the grain as security for the in-

debtedness of Enos rests upon the proposition that the grain belongs to him, since there would be no occasion to provide that they might retain their own property to secure the payment of his debt to them, and the provision in the contract that they might retain the one-half of the crop "hereinbefore agreed to be given to him," and might sell the same and out of the proceeds pay and discharge their claim against him, and pay the surplus to him, implies that it is his property which is to be retained and sold. A secret lien of this kind cannot be enforced against the claims of the lienor's creditors. (*Palmer v. Howard,* 72 Cal. 293; 1 Am. St. Rep. 60; *Stockton Sav. & L. Soc. v. Purvis,* 112 Cal. 236; 53 Am. St. Rep. 210.) Irrespective of these considerations, moreover, the division of the grain and segregation to Enos of the half belonging to him must be regarded as a surrender to him of any possession which the plaintiffs might have previously had, and would supersede the declaration that it might be held as security for his indebtedness.

The judgment and order are affirmed.

Henshaw, J., and Garoutte, J., concurred.