[Civ. No. 372. Fourth Appellate District.—June 8, 1933.]

EARL W. WESTCOTT, as Trustee in Bankruptcy, etc., Respondent, v. P. G. NIXON, Appellant.

Ward G. Rush and G. L. Aynesworth for Appellant.

Sherrill Halbert and Bush & Cleary for Respondent.

CAMPBELL, J., *pro tem.*—The plaintiff, as trustee in bankruptcy of the bankrupt estate of Robert Curtis Kitchel, a bankrupt, began this action to quiet title to 100 tons of baled alfalfa hay, and also to recover certain alleged preference payments and also to quiet title to an order for approximately $100. In the first cause of action it is alleged that on the second day of January, 1930, Kitchel indorsed and delivered to Nixon, in payment of past indebtedness, an order in the sum of $308 drawn on the Globe Grain and Milling Company by Kitchel; that Kitchel was bankrupt at the time and Nixon knew or had reasonable cause to know the fact. The second count alleges that on the tenth day of December, 1929, Kitchel, under similar circumstances, gave Nixon a personal check on the Bank of Italy for $300. The third count alleges that on the fourth day of February, 1930, under similar circumstances, Kitchel assigned an account of $107.94 on the Globe Grain and Milling Company to Nixon; that Nixon had not received the money, and prays that the plaintiff's title to the same be quieted. The fourth count alleges that on the twenty-fifth day of July, 1929, Kitchel sold and attempted to transfer to Nixon 100 tons of alfalfa hay, but retained possession and control thereof. The trial court entered judgment in favor of the plaintiff on each count. The court found that payment had been made as alleged in the first cause of action, and further found that at about the time the payment was made, P. G. Nixon was familiar with the financial condition of the said Kitchel, and knew, or had reasonable cause to believe, that the said Kitchel was insolvent and unable to pay his debts as they became due. The court adjudged the payment a preference. A similar finding was made as to the $300

personal check and the order on the Globe Grain and Milling Company, for the rest of the money that was owing him, the total being $107.94. On February 12, 1930, Kitchel filed his petition in bankruptcy and was thereafter adjudicated a bankrupt.

The question of the existence of reasonable cause to believe that a preference would be effected, is a question of fact, and each case must be determined from an independent investigation of the facts. (Remington on Bankruptcy, vol. 4, sec. 1820; 7 C. J., p. 152.) In *In re McDonald & Sons*, 178 Fed. 487, the court says:

"Positive proof of collusion between debtor and creditor, by which one may be preferred, is not generally to be expected, and for that reason, among others, the law allows a resort to circumstances as a means of ascertaining the truth, and the rule of evidence is well settled that circumstances inconclusive if separately considered may by their joint operation, especially when corroborated by moral coincidences, be sufficient."

In the case of *Sundheim* v. *Ridge Avenue Bank*, 138 Fed. 951, the court says: "Reasonable cause to believe that it was intended to give a preference does not require proof that the defendant had either actual knowledge or actual belief, but only such surrounding circumstances as would lead an ordinarily prudent business man to conclude that a preference was intended." By the weight of authority, the test is: What inference would an ordinary business man draw from the facts? The facts that were before the trial court may be briefly summarized as follows: In December, 1928, Nixon agreed to furnish Kitchel money, the arrangement first being that he would loan the money on the hay, and finally, according to the testimony of Kitchel, culminated with Nixon taking an option on the hay. At that time Nixon knew that Kitchel was running a ranch and had to have money to pay his rent, labor and power bills. Nixon kept in touch with Kitchel during the months following their first business transaction, and finally, in September, Nixon advanced Kitchel $400 in two separate checks. In the latter part of November, Kitchel and Nixon discussed an arrangement whereby Kitchel purchased a one-half interest in Nixon's dairy herd; about the 1st of December, 1929, Nixon made an agreement with Kitchel to

sell him a one-half interest in his dairy for $3,250, first payment to be made within a month or six weeks. The initial payment was supposed to be $1500, but Kitchel could not pay this amount and about December 16th Kitchel paid $300. Kitchel told Nixon he could apply the rest of the money coming from the cotton-gin as he had considerable money coming, but Nixon, upon investigation of the cotton-gin, found Kitchel was not telling him the truth, and, in fact, there was very little money coming to Kitchel, and it was impossible for Kitchel to meet the balance of the payments on account of the purchase price of one-half interest in the dairy herd. The evidence further shows that Kitchel could not carry out his agreement to buy the cattle, and Nixon terminated Kitchel's contract and put Kitchel to work on his ranch at $100 per month. This occurred on or about January 1, 1930. Thus it appears conclusively that Nixon, by his investigation prior to January 1, 1930, knew of Kitchel's financial condition. Nixon received payment of $308 in January in the course of business, by a check or by cash left by the order on the cotton-gin, and February 4th, eight days before Kitchel went into bankruptcy, Nixon took from him an order for all the money that Kitchel had coming from the cotton-gin. The evidence shows that the payment of $300 made by Kitchel about December 15th, on account of sale of cattle, was a payment on a previous indebtedness and not a cash transaction as contended by appellant. Further, as the court says in the case of *In re John Morrow & Co.*, 134 Fed. 686: "A sale of goods to be paid for in ten or thirty days is not, in fact, a cash transaction, and cannot, by agreement of the parties, or a usage of merchants, be regarded as such within the meaning of the bankruptcy act." It appears from the record that appellant Nixon, in testifying at the trial in the lower court, endeavored to evade answering some of the material questions propounded by counsel, and in such cases the trial courts particularly have an opportunity to draw conclusions from the attitude and actions of a witness while on the stand, which conclusions, in many instances, are of decided assistance to the court in determining questions at issue. It is apparent from the record that there is ample evidence to sustain the trial court's findings on the first three causes of action.

494

In reference to the fourth cause of action of the plaintiff's complaint, the court found " . . . on the 25th day of July, 1929, the said Robert Curtis Kitchel transferred, or attempted to transfer, the title of said personal property, to-wit, said approximately one hundred tons of baled alfalfa hay . . . to the defendant, P. G. Nixon; that said transfer, or attempted transfer or sale of said personal property to said P. G. Nixon . . . was not accompanied by immediate delivery or transfer or possession of said personal property, and that there followed said transfer or attempted transfer or sale no actual or continued change of possession of said personal property but on the contrary the said Robert Curtis Kitchel continued at all times in control and in possession of said personal property up to the date of his adjudication as a bankrupt and that no public notice whatever by recording or otherwise was given of the transfer or attempted transfer or sale thereof to the said defendant P. G. Nixon".

Appellant challenges the sufficiency of the evidence to support the finding. In the case of *Hassell* v. *Bunge,* 167 Cal. 365 [139 Pac. 800, 801], the court says: " . . . change of possession is a question of fact to be determined by the court or jury upon a consideration of all the evidence. The finding upon this, as upon other issues of fact, is conclusive on appeal, unless, reading the evidence in the light and with inferences most favorable to the conclusion reached below, the appellate court can say that that conclusion is without substantial support in the record."

Briefly summarized, the evidence shows that there was an attempted sale of 100 tons of hay about May 17, 1929, and that the purchase price was payable by July 17, 1929. The hay was yet to be cut and baled at that time, but there was at least 61 tons of hay in the barn by July 26, 1929, and by October there was 106 tons in the barn. That the appellant did nothing to take possession of said hay, nor did he exercise any control over the hay between the twenty-sixth day of July, 1929, and the following February. On the other hand, there is evidence that the vendor, Kitchel, had repeatedly exercised control over the hay, and had even sold hay out of the very pile appellant now contends was hay set aside for him. Thus the evidence clearly shows that the hay was not delivered immediately, but, on

the contrary, remained in the barn of the vendor for a period of some six months or more after the sale, and the appellant made no visible effort to take delivery, or exercise any control over it.

Unless, as a matter of law, there was some reason for the contrary, the delivery of the hay should have been actual, apparent and not constructive, and the transfer, possession or control of the hay by the transferee should be continuous, and so open and unequivocal as to carry with it the usual marks and indication of ownership. (Sec. 3440, Civ. Code.)

The mere fact that the crop was yet to be grown is no justification for the failure to deliver it immediately upon the hay being cut and baled, for while property not in existence at the time of the sale cannot be the subject of the rule of immediate delivery, nevertheless, when the property comes into existence, the delivery must be made at once. (*Sequeira* v. *Collins*, 153 Cal. 426 [95 Pac. 876]; 12 Cal. Jur. 1009.)

It cannot be said, as a matter of law, that the appellant used due diligence in taking possession and control of the hay when he allowed it to remain at the place of sale and under the possession and control of the vendor the long period of time that he did in the instant case.

"Growing crops are not susceptible of manual delivery until harvested and are not in the possession or control of a vendor so as to require an immediate change of delivery upon sale. When, however, the crop is harvested the vendee must take immediate possession and retain the same under penalty of having the transfer voided at the instance of creditors." (12 Cal. Jur. 1005.) This rule is supported by *Crocker* v. *Cunningham*, 122 Cal. 547 [55 Pac. 404]; *Davis* v. *McFarlane*, 37 Cal. 634 [99 Am. Dec. 340]; *O'Brien* v. *Ballou*, 116 Cal. 318 [48 Pac. 130].

Reading the evidence in the light of the inferences most favorable to the conclusion reached by the trial court, we cannot say that the finding is without substantial support in the record. It follows that the attempted transfer of the personal property to appellant in this action was conclusively presumed to be fraudulent, and therefore void against nonassenting creditors. (Civ. Code, sec. 3440.)

Let the judgment of the lower court be affirmed. It is so ordered.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 7, 1933.