[No. 3,694.]

# RICHARD GRAY *v.* WILLIAM COREY.

FRAUDULENT SALE OF PERSONAL PROPERTY.—D. owned several teams, with which he was engaged in hauling bark for G. Drivers were employed, and D. did not personally superintend the work. The teams were fed and kept nights at a barn on G.'s land, and the drivers slept there. G. met D. at a town several miles from the barn, and bought the teams, and, returning toward the barn, met the teams on the road, and told the drivers of his purchase, and requested them to continue work for him, to which they agreed. He went to the barn the same night, and renewed the arrangement with the drivers, who, the next day, continued hauling bark, and were met by an officer, who attached the teams at the suit of a creditor. *Held*, that there was not an actual delivery and continued change of possession as required by the Statute of Frauds.

APPEAL from the District Court, Twentieth Judicial District, County of Santa Cruz.

Action to recover the possession of two mules and their harness, and two lumber wagons.

The plaintiff was, and for several months prior to the month of October, 1871, had been the owner of certain lands in the county of Santa Cruz, and extensively engaged in the preparation and transportation of oak bark for the purpose of tanning. One Donnellan was, about the first of October, and for many months prior thereto, the owner of several teams of horses, mules, harness and wagons, and engaged in hauling bark for plaintiff from plaintiff's woods, to the tanneries in the vicinity of Santa Cruz. Donnellan was hauling this bark under a contract. He had three teams engaged, each under the charge of a driver. Donnellan himself had but little to do with the active and personal prosecution of this work; but the several teams were managed and worked by their respective drivers. Donnellan, with his family, resided in a house that was upon the land of plaintiff, and upon the same premises, and adjacent to the house occupied by Donnellan and his family, was a corral, and certain sheds and a barn where the horses were kept at night, and in the barn were stored several tons of hay and a small quantity of barley, owned by Donnellan, and from which the teams were fed by the drivers. In the vicinity of this corral the drivers camped when not driving upon the road. For several months prior to the first of October, 1871, this had been the continuous employment, location and position of the parties and property in question.

Upon the 2d of October, 1871, Donnellan being then in failing circumstances, executed to plaintiff a bill of sale of the teams, wagons, hay and grain above described, together with all the paraphernalia used by the men, and about the teams in the transportation of bark. The consideration for this sale was six hundred dollars—one half cash, one half upon a contract then existing between Gray and Donnellan. The bill of sale was signed and delivered

at the town of Santa Cruz, upon the 2d of October, 1871, at about 3 o'clock P. M., of that day. After receiving the bill of sale the plaintiff started out upon the road; a few miles from Santa Cruz, he met the teams he had purchased, in charge of Donnellan's-drivers, and informed the drivers of Donnellan's situation; that he, Donnellan, had left, and that plaintiff had purchased the property. He proposed to the men to continue in his, plaintiff's employment, as they had done in the employment of Donnellan. The men made no objection, but proceeded to the mills with their loads. That night the men and teams returned to the place where they had camped while in Donnellan's employ. The animals were fed from the same supplies and taken care of by the same men. That evening the plaintiff visited the camp of the teamsters, exhibited his bill of sale from Donnellan, and informed the men of its contents, and renewed more specifically his offer to continue the men in the same position in his own employment. To this proposition the drivers assented.

This, and what occurred during the day when plaintiff met the teams upon the road, are all the acts of plaintiff in connection with the property, after his purchase, and before the seizure hereafter mentioned.

Upon the morning of October 3d, the drivers fed the teams from the same supplies as before, and proceeded to haul bark from the plaintiff's land to the tanneries, proceeding over the same road, each man in charge of the same team, and the whole employment being in every respect precisely the same that it had been while Donnellan was the owner of the property. While thus engaged upon the road upon the 3d of October, 1871, the teams and wagons were attached by the defendant, as constable, upon a process issued from a Justice's Court and at the suit of one Fraser against Donnellan, and as Donnellan's property.

The property, except two horses and two wagons was returned to plaintiff.

Donnellan's family were residing at the house where the horses were kept and fed, and they continued to reside

there until after the attachment. Donnellan himself did not accompany Gray after the bill of sale was given, nor did he that night return home, but remained in town, and upon the morning of the 2d, went to San Francisco.

From the 2d of October the drivers were paid for their services by plaintiff, Gray. Plaintiff paid full value for the property.

There was no actual or attempted fraud in the transaction upon the part of the plaintiff and Donnellan, or either of them, other than what the law may presume from the facts above recited.

The Court below held that there was not an actual delivery and a continued change of possession, as required by the Statute of Frauds.

The defendant recovered judgment, and the plaintiff appealed.

*Albert Hogan* and *J. H. Logan*, for the Appellant, argued that there was a sufficient delivery and change of possession; and cited, *Ford* v. *Chambers*, 28 Cal. 13; *Lay* v. *Neville*, 25 Cal. 545; *Godchaux* v. *Mulford*, 26 Cal. 316; *Jewett* v. *Warren*, 12 Mass. 300, and *Ricker* v. *Goss*, 5 N. H. 570.

*Heacock & Adams*, for the Respondent, argued that there was no delivery or change of possession; and cited, *Dickey* v. *Davis*, 39 Cal. 567; *Woods* v. *Bugby*, 29 Cal. 466, and *Whitney* v. *Stark*, 8 Cal. 514.

By the Court, McKINSTRY, J.:

The Court below held that there was not an actual or immediate delivery and continued change of possession of the personal property sued for in this action, so as to render the sale valid as against the creditors of Donnellan. We think this conclusion is sustained by the finding of facts.

Judgment affirmed.

Mr. Justice RHODES did not express an opinion.