[Civ. No. 966.   First Appellate District.—May 21, 1912.]

## JOSEPH R. GUTHRIE, Respondent, v. JAMES H. CARNEY, Appellant.

ACTION FOR CONVERSION AGAINST CONSTABLE—SEIZURE AND SALE OF WINES AND LIQUORS—PRIOR TRANSFER FROM DEBTOR—INSUFFICIENT CHANGE OF POSSESSION.—In an action for damages against a constable for the alleged conversion of plaintiff's property, consisting of a stock of wines and liquors, by seizure and sale thereof under execution against the vendor of plaintiff as debtor, under whom plaintiff claims a prior transfer, it is held that such prior transfer cannot sustain recovery when not accompanied by an immediate delivery nor followed by an actual and continued change of possession, as required by section 3440 of the Civil Code, to render it valid against the creditors of the vendor.

ID.—PROPERTY SUSCEPTIBLE OF ACTUAL DELIVERY—CONSTRUCTIVE DELIVERY AND CHANGE OF POSSESSION INSUFFICIENT.—The property in question being susceptible of an immediate delivery and an actual and continued change of possession, facts showing a constructive delivery and a constructive change of possession are insufficient. A constructive delivery and change of possession only applies where property is incapable of actual delivery.

ID.—EFFECT OF RECORDATION OF BILL OF SALE.—Whatever effect the recordation of a bill of sale may have in an action between parties involving a dispute as to the title of property claimed to have been sold, in the present action it is of no consequence in the determination of the question as to whether there was an immediate delivery and an actual change of possession of the property here involved, whether the bill of sale was recorded at the time of the alleged sale.

ID.—DELIVERY OF KEY TO BARN IN WHICH PROPERTY WAS STORED—CONSTRUCTIVE DELIVERY NOT "ACTUAL."—The delivery of the key to the barn in which the stock of wines and liquors was stored at the time of the execution and recording of the bill of sale did not of itself constitute an actual delivery. Viewed in its most favorable aspect this circumstance was merely evidence of a constructive delivery and possession, whereas the law requires, in every case where the situation and nature of the property render it possible, that the change of possession must be visible, apparent and "actual." The word "actual," as used in section 3440 of the Civil Code, means, "existing in act, and truly and absolutely so; really acted or acting; carried out; opposed to potential, visual or theoretical."

ID.—SUBSEQUENT ACTUAL POINTING OUT OF PROPERTY—IMMEDIATE DELIVERY ESSENTIAL.—If it be conceded that the subsequent actual pointing out of the property ten days after the sale, under the cir-

cumstances then and previously existing, constituted a sufficient delivery and change of possession at that time, yet such circumstances are absolutely opposed to the claim that an immediate delivery of possession followed the sale, which is imperatively necessary under the statute, in order to constitute a sale which would be valid and protected from the claims of creditors, even though the creditors had acquired no rights by attachment or execution prior to a delivery which did not immediately follow the sale.

ID.—NATURE OF "IMMEDIATE DELIVERY"—CIRCUMSTANCES AND CHARACTER OF PROPERTY TO BE CONSIDERED—WINES AND LIQUORS.—The term "immediate delivery," as used in the statute, does not mean a delivery *instanter,* but imports that it must be within a reasonable time or so soon after the sale as is practicable. In determining what is a reasonable time the nature and character of the property and all the circumstances of the transaction must be considered. Since, in the present case, the property consists wholly of wines and liquors, some of which is, in barrels, some in demijohns, and the rest in bottles, there is no apparent reason why the plaintiff could not have taken actual possession of the property at the time of or immediately following the sale.

ID.—INFORMATION OF CHANGE OF OWNERSHIP TO OWNER OF BARN—DELIVERY NOT SHOWN—SELF-SERVING DECLARATION.—The fact that when the goods were pointed out ten days after the sale, the owner of the barn was informed that the plaintiff was the owner of the property, was of no importance in determining the question whether there had been a valid sale as against the creditors of the plaintiff's assignor. Verbal or written notice of a sale of personal property, unaccompanied by any change in the status of the property, is not a delivery of possession; and the plaintiff's assertion that he had purchased the property was a self-serving declaration which could not tend to prove a delivery.

ID.—FINDING OF VALID SALE AGAINST EVIDENCE—ERRONEOUS FINDING ENCOURAGED BY ERROR IN INSTRUCTIONS.—It is held that the finding of the jury that the sale was accompanied by an immediate delivery and an actual and continued change of possession, as required by section 3440 of the Civil Code, is against the evidence; and that such erroneous finding was encouraged by erroneous instructions: (1) That if the property was so situated that the vendee was entitled to and could rightfully take possession of it at his pleasure, he is considered as having received it, and that it was not necessary under the law and the circumstances of this case that he should actually take the property into his possession; (2) That when a valuable consideration is paid for the purchase of property, the purchase is presumed to be in good faith; (3) That fraud is never presumed but must be affirmatively proved by the party alleging the same. It is held that such instructions are inconsistent

with the statutory presumption of fraud arising under section 3440 of the Civil Code.

ID.—BURDEN OF PROOF IN RELATION TO PRESUMPTION OF FRAUD.—While ordinarily the burden of proof, when not shifted by statute, is on the party assailing a transfer on the ground of fraud, yet where, as here, facts appear which *prima facie* create a statutory presumption of fraud as to the creditors of the vendor, the burden of proof not only shifts to the party claiming under the vendor, but the presumption, if established, renders the transaction absolutely void under the statute.

ID.—SUBSTANTIALLY CONFLICTING INSTRUCTIONS REQUIRING REVERSAL.— Where the instructions given were substantially conflicting, so that correct instructions are in direct conflict with other instructions given, so as to render the charge of the court in its entirety so hopelessly contradictory and inconsistent in the application of the law to the vital issues of the case as to make it impossible to determine which of the trial court's views of the law the jury adopted as the basis for this verdict, such conflicting instructions require a reversal, since a material error in any of them must be deemed prejudicial.

ID.—ERROR IN EVIDENCE—COLLATERAL ATTACK ON JUDGMENT AND EXECUTION.—Where the judgment and execution under which the property was sold by the defendant constable had been introduced in evidence to justify the sale thereunder, it was error to admit the testimony of witnesses, for the purpose of impeaching collaterally the judgment and execution which were *prima facie* valid, by showing that the plaintiff in execution was not a creditor of the execution debtors when the judgment was rendered and the execution was issued.

APPEAL from a judgment of the Superior Court of Santa Cruz County, and from an order denying a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Benjamin K. Knight, for Appellant.

Netherton & Torchiana, for Respondent.

LENNON, P. J.—In this action the plaintiff recovered a judgment against the defendant in the sum of $600, as damages for the alleged conversion of personal property which the defendant, as constable of Santa Cruz township, took into his possession and sold at public auction under and by virtue

of a writ of execution issued out of the justice's court of said township, in an action therein pending wherein G. A. Deiter was plaintiff and the firm of Hedgpeth Bros. was defendant.

The present case was tried by the court with a jury, and verdict rendered in favor of the plaintiff.

From the judgment entered thereon, and from an order denying a new trial, the defendant has appealed upon the judgment-roll and a statement of the case, which purports to contain all of the evidence and proceedings had and taken upon the trial in the lower court.

The plaintiff's complaint is in the usual and ordinary form of actions in conversion. Defendant's answer denied plaintiff's ownership of the property claimed to have been converted, and alleged ownership in the copartnership consisting of M. Hedgpeth and N. Hedgpeth. As a further defense to the action defendant pleaded that, with intent to cheat and defraud one G. A. Deiter, a creditor of Hedgpeth Bros., and while an action brought by Deiter was pending in the justice's court, the Hedgpeths pretended to sell to Guthrie, the plaintiff here, the property in question, which consisted of a small stock of wines and liquors. In his answer the defendant further averred that the pretended sale was not accompanied by an immediate delivery nor followed by an actual and continued change of possession of the property.

The facts of the case upon which the verdict and judgment were founded are, in their essential features, practically without conflict, and in substance are as follows:

In the month of November, 1907, and for some time prior thereto, Hedgpeth Bros. were engaged in carrying on the hotel and saloon business of the "Pacific Ocean House," in the city of Santa Cruz. On November 3, 1907, the hotel and bar were destroyed by fire. At the time of the fire Hedgpeth Bros. were indebted to numerous creditors; and immediately after the fire they made an assignment to their creditors, among whom were Guthrie, the plaintiff in this action, and Deiter, the plaintiff in the justice's court action, out of which issued the writ of execution hereinbefore referred to. Before any settlement with the creditors of Hedgpeth Bros. had been actually consummated the trustees appointed by the creditors, in disposing of the assigned assets of Hedgpeth Bros., resold to them for the sum of $100 the entire stock of wines and

liquors in question. Some time thereafter Hedgpeth Bros. moved the stock of wines and liquors from the cellar of the Pacific Ocean House, where they had remained since the fire, to a barn situated immediately in the rear of and appurtenant to the Metropole Hotel in the city of Santa Cruz, which hotel was also conducted by Hedgpeth Bros.

On November 17, 1907, which was after the fire and after a settlement with the creditors of Hedgpeth Bros. had been made, the plaintiff Guthrie loaned them the sum of $300 on an unsecured promissory note; and on March 26, 1908, Guthrie entered into an agreement with Hedgpeth Bros. to buy the stock of wines and liquors for the sum of $600. In payment therefor the promissory note previously executed by Hedgpeth Bros. was canceled and returned. The balance of the purchase price was to be paid in cash, but no time was specified within which it was to be paid. However, $150 in cash was paid on April 23, 1908, and on May 23, 1908, the remaining $150 was paid in cash. At the time of the alleged sale to Guthrie and before a cash payment had been made by him Hedgpeth Bros. executed a bill of sale of the stock of wines and liquors to Guthrie, which was recorded shortly thereafter. Simultaneously with the execution of the bill of sale Hedgpeth Bros. delivered to plaintiff the key to the barn in which the property was stored. Ten days thereafter Hedgpeth Bros. took Guthrie to the barn where the property was stored, and pointed it out. An inventory of the property was not attached to the bill of sale, and Guthrie did not at the time the property was shown to him, or at any other time prior to the levy of the execution, make an inventory of the same. Mr. Rhein, the owner of the Hotel Metropole building and of the barn appurtenant thereto, was present when Hedgpeth Bros. and Guthrie visited the barn to view the property; and upon that occasion Rhein was informed by Guthrie that he had purchased the property from Hedgpeth Bros. and would thereafter pay the rent for the use of the barn. Hedgpeth Bros., however, had been using the barn free of rent, and Rhein consented that Guthrie might also use it free of rent.

From March 26, 1908, the date of the alleged sale to Guthrie, the property remained in the barn under the condi-

tions stated until it was levied upon and sold by the defendant Carney on the twenty-sixth day of May, 1908.

Aside from receiving the keys to the barn and viewing the property ten days later, Guthrie exercised no acts of ownership over the property, and several times after the alleged sale Hedgpeth Bros. endeavored to sell the property to as many as four different persons in Santa Cruz and to others in Watsonville. Hedgpeth Bros., however, claimed that in offering the property for sale, they were merely acting as the agents of Guthrie.

The points urged by appellant for a reversal of the judgment and order are (1) insufficiency of the evidence to justify the verdict or support the judgment; (2) erroneous instructions of the trial court; and (3) error occurring at the trial in the admission of certain testimony.

It is appellant's contention that the evidence is insufficient to justify the verdict and support the judgment in this, that it affirmatively appears that the alleged transfer was not accompanied by an immediate and actual delivery of the property, nor followed by an actual and continued change of possession, as is imperatively required by section 3440 of the Civil Code.

The finding of the jury, implied from the verdict, that the sale in question was accompanied by an actual and immediate delivery of the property, in the sense contemplated by the statute, must stand or fall upon the salient features of the transaction, which may be epitomized as follows: (1) The execution and recordation of the bill of sale at the time of the alleged sale; (2) the delivery, at the time of the execution and recordation of the bill of sale of the key to the barn in which the property was stored; (3) that ten days after the execution of the bill of sale and the delivery of the key Hedgpeth Bros. took Guthrie to the barn and pointed out the property; and (4) that at the time of pointing out the property to Guthrie, Mr. Rhein was informed that Guthrie was the owner thereof.

In our opinion these facts, measured by the rule declared in section 3440 of the Civil Code, fall short of showing that there was an immediate delivery of the property in controversy to the plaintiff by Hedgpeth Bros., or that there was an actual and continued change of possession such as the law

demands in order to validate a sale of personal property as against the claims of creditors.

In an action between the parties to a transaction involving a dispute as to the title to the property claimed to have been sold, the execution and recordation of the bill of sale might suffice as *prima facie* proof of the respective rights of the parties; but in the present action it was of no consequence in the determination of the question as to whether or not there was an immediate delivery and an actual change of possession of the property. (*George* v. *Pierce*, 123 Cal. 172, [56 Pac. 53].) The delivery of the key to the barn where the property was stored did not in and of itself constitute an actual delivery. Viewed in its most favorable aspect, this circumstance was merely evidence of a constructive delivery and possession, whereas the law requires in every case, where the situation and nature of the property render it possible, that the change of possession must be visible, apparent and actual, and not merely constructive. (Civ. Code, sec. 2440; *Chaffin* v. *Doub,* 14 Cal. 384; *Bunting* v. *Saltz,* 84 Cal. 168, [24 Pac. 167]; *Sequeira* v. *Collins,* 153 Cal. 426, [95 Pac. 876].)

The word "actual," as used in section 3440 of the Civil Code, has been defined to mean "existing in act, and truly and absolutely so; really acted or acting; carried out; opposed to potential, possible, visual or theoretical." (*Bunting* v. *Saltz,* 84 Cal. 168, [24 Pac. 167].)

Conceding that a mere pointing out of the property in conjunction with a previous constructive delivery may, in certain circumstances, constitute a sufficient delivery and change of possession, the undisputed fact remains that ten days at least had elapsed between the constructive delivery and the actual viewing of the property. This fact in itself, under all of the circumstances of the present case, is obviously and absolutely opposed to the claim that an immediate delivery of possession followed the sale. Immediate delivery was imperatively necessary under the statute in order to constitute a sale which would be valid in the eyes of the law and protected from the claims of creditors. This is so, even though the creditors had acquired no rights by attachment or execution previous to a delivery which may have been actual but which did not immediately follow the sale. (*Howe* v. *John-*

*son,* 107 Cal. 75, [40 Pac. 42] ; *Ruggles* v. *Cannedy,* 127 Cal.
300. [46 L. R. A. 371, 53 Pac. 911, 59 Pac. 827].)

We do not wish to be understood as declaring that the
phrase "immediate delivery" as used in the statute means
delivery *instanter.* Delivery within a reasonable time, or as
soon after the sale as is practicable, will satisfy the demand
of the statute; and in determining what is a reasonable time
the character of the property, its situation and all of the cir-
cumstances of the transaction must be considered. (*Samuels*
v. *Gorham,* 5 Cal. 226; *Carpenter* v. *Clark,* 2 Nev. 243; *Bas-
singer* v. *Spangler,* 9 Colo. 175.)

In the case of *Howe* v. *Johnson,* 107 Cal. 67, [40 Pac. 42],
the property in controversy was capable of immediate deliv-
ery; and in that case it was squarely held that a delivery of
the property about two weeks after the sale was not an im-
mediate delivery as required by section 3440 of the Civil Code,
and that, as a consequence, the sale must be conclusively pre-
sumed to be fraudulent and void as against the claims of cred-
itors existing at the time of the sale.

We are not unmindful of the suggestion of counsel for the.
plaintiff that the statutory rule under discussion must be rea-
sonably applied to the facts of each particular case, and that,
therefore, the determination of the question as to whether or
not there has been in any given case an immediate delivery
and actual possession of the thing sold depends, in a measure,
upon the character of the thing sold, the nature of the transac-
tion, the position of the parties, and the intended use of the
property. (*Porter* v. *Bucher,* 98 Cal. 454, [33 Pac. 335].)
Thus in cases where actual delivery and immediate pos-
session are, by reason of the peculiar situation and bulky
nature of the thing sold, impossible by ordinary means and
methods, the strictness of the rule is relaxed to meet the ex-
igencies of the case. *Chaffin* v. *Doub, supra,* was such a case;
and there the court, in construing and applying the rule, de-
clared that "It may be said in general that a delivery must
be a transfer of possession and control made by the seller
with the purpose and *effect* of putting the goods out of his
hands. This is a sufficient delivery, whatever its form.
Hence it may be constructive, as by delivering the key of a
warehouse, or making an entry in the books of a warehouse
keeper, or delivery with an indorsement of a bill of lading, or

even a receipt, or without even such, when the goods are bulky and difficult of access, as a quantity of lumber floating in boom, or a mass of granite, or a large stock of hay.''

In the present case the property consisted solely of wines and liquors, some of which was in barrels, some in demijohns and the balance in bottles. .There was no apparent reason— and none has been attempted to be shown—why Guthrie could not have taken actual possession of the property at the time of or immediately following the sale. The present case, therefore, does not fall within the category of those cases wherein it has been held that an actual and immediate delivery is not necessary where, by reason of the situation of the property or its character, such delivery is impracticable or impossible.

The fact that Rhein, the owner of the barn in which the property was stored, had been informed some ten days after the alleged sale.that Guthrie was then the owner of the property, was of no importance in determining whether or not there had been a valid sale as against the creditors of Hedgpeth Bros. Verbal or written notice of a sale of personal property given to an individual or to any number of individuals unaccompanied by an immediate and actual change in the status of the property, is not equivalent to delivery of possession; and Guthrie's assertion that he had purchased the property in question was but a mere conclusion and a self-serving declaration, which had no legitimate tendency to prove a delivery. (*Sequeria* v. *Collins,* 153 Cal. 426, [95 Pac. 876]; see opinion of Beatty, C. J., in *Hunt* v. *Hammel,* 142 Cal. 461, [76 Pac. 378].)

In concluding this phase of the case it will suffice to say that for the reasons stated the facts hereinbefore enumerated, taken singly or all together, were not, under the particular circumstances of the case, sufficient to support the finding of the jury that the alleged sale of the property in question was accompanied by an immediate delivery and an actual and continued change of possession within the purview of the statute.

The erroneous finding of the jury doubtless was inspired by the erroneous instructions of the trial court, wherein the jury were in effect charged: (1) That if the property was so situated that the vendee was entitled to and could rightfully take possession of it at his pleasure, he is considered as hav-

ing actually received it, and that it was not necessary, under the law and the circumstances of this case, that he should actually take the property into his possession; (2) That when a valuable consideration is paid for the purchase of property the purchase is presumed to be in good faith; (3) That fraud is never presumed, but must be affirmatively proven by the party alleging the same.

The language of the first instruction just referred to is almost identical with that of an instruction which, in the case of *Pearce* v. *Boggs,* 99 Cal. 340, [33 Pac. 906], was held to be prejudicial error.

To charge the jury—as in effect the trial court did in the present case—that the right of the vendee to take the property at his pleasure was the equivalent of an actual delivery was held, in the case last cited, to be in direct conflict with section 3440, Civil Code, for the reason that ''if the property is so situated that the vendee can take possession thereof at his pleasure, his failure to take such possession constitutes the very fraud which the statute is intended to prevent, and renders the previous transfer to him void as against the creditors of his vendor.'' (See, also, *Hesthal* v. *Myles,* 53 Cal. 623.)

The averment of the defendant's answer that there was no immediate delivery and no actual and continued change of possession of the property presented the paramount issue in the present case. Notwithstanding the presence of proof which tended strongly to support the averment, and bring the facts of the case within the presumption provided for by section 3440, Civil Code, the trial court charged the jury that ''Fraud is never to be presumed, but must be affirmatively proven by the parties alleging the same. The law presumes that all men are fair and honest, that their dealings are in good faith and without intention to disturb, cheat, hinder, delay or defraud others. And where a transaction called into question is equally capable of two constructions—one that it is fair and honest, and one that it is dishonest—then the law is that the fair and honest construction must prevail, and the transaction called in question must be determined to be fair and honest; and in this connection I instruct you that the law presumes the transaction between Hedgpeth Bros. and Guthrie to have been fair and honest, and you must so consider it

until the contrary has been proven by a preponderance of evidence.''

The vice of the quoted instruction lies in the fact that it ignores the provisions of section 3440, Civil Code, which in effect declares that a sale of personal property under the circumstances therein enumerated is conclusively presumed to be fraudulent and, therefore, void against those who are the creditors of the vendor while he remains in possession of the property.

Ordinarily, the burden of proof, where it is not shifted by statutory provisions, is on the party assailing a transfer of property upon the ground of fraud; but where, as here, facts appear which *prima facie* create or tend to create a statutory presumption of fraud as against the vendors' creditors, the burden of proof not only shifts to the party claiming under the vendor, but the presumption, if established, renders the transaction absolutely void, under our statute.

While it is true, generally, that fraud must be established like any other fact in a case, and that as a matter of law, in the absence of proof, it is never to be presumed, nevertheless in actions of the kind under consideration, if the facts appearing in evidence tend to create the statutory presumption of fraud, this in itself would be a complete defense to the action; and of necessity the defendant here was entitled to have the jury fully and clearly instructed upon the law appertaining to that phase of the case. (*Cooper* v. *Friedman,* 23 Tex. Civ. App. 585, [57 S. W. 581].)

Upon the question of fraud the trial court further charged the jury that ''when a valuable consideration is paid for the purchase of property the purchase is presumed to be in good faith,'' and that before a finding could be made against the plaintiff in the present case on the question of fraud the jury ''must be satisfied by a preponderance of the evidence not only that Hedgpeth Bros. transferred the property to plaintiff with the intention to defraud their creditors, but that plaintiff himself either knew of such intention, and was a party thereto, or as a reasonable person ought to have known thereof.''

This instruction not only eliminates, but nullifies, the provisions of section 3440, Civil Code, and clearly, under the authorities cited, the giving of it was prejudicial error.

We express no opinion as to whether or not the evidence upon the whole case, as claimed by defendant, shows that Hedgpeth Bros. transferred the property in question to the plaintiff in fraud of creditors, and that plaintiff was aware of such intention and was willfully a party thereto. Assuming, however, that defendant failed in his proof to support that issue, still it was the duty of the jury to find against the plaintiff, and the trial court should have so charged, if the evidence was otherwise sufficient to warrant a finding that the transfer of the property was not accompanied by an immediate delivery and followed by an actual and continued change of possession.

The error of these instructions was not cured by anything which the trial court said elsewhere in its charge to the jury. True, the trial court did in another part of its charge correctly state the law as applied to the invalidity of a transfer of personal property which was not accompanied by an immediate delivery nor followed by an actual and continued change of possession.

The charge of the court, however, was in its entirety so hopelessly contradictory and inconsistent in its application of the law to the vital issues of the case as to make it impossible to determine which of the trial court's conflicting views of the law the jury adopted as the basis for their verdict.

For instance, in one part of its charge the trial court told the jury that the sale in question was conclusively presumed to be fraudulent if it was not followed by an actual change of possession, and that "an actual change of possession means existing in fact. . . . The word 'actual' as used in the law is intended to exclude the idea of a mere formal change of possession. . . . " On the other hand, the jury in a preceding instruction were erroneously told that "if the property was so situated that Guthrie was entitled to and could rightfully take possession of it at his pleasure, it was not necessary under the law that Guthrie should take the property into his possession. A delivery thus made will satisfy the requirements of the law."

Clearly, these two instructions are irreconcilable and confusing. They are fair examples of the conflict of ideas which runs throughout the charge of the court; and doubtless so confused the jury that they were unable from the instructions

as a whole to fully, fairly and intelligently appreciate and apply the law of the case.

It being impossible to tell which of the several conflicting instructions controlled the verdict of the jury, a material error in any one of them must be deemed to be prejudicial. (*Sappenfield* v. *Main St. etc. R. R. Co.*, 91 Cal. 48, [27 Pac. 590] ; *Stephenson* v. *Southern Pacific Co.*, 102 Cal. 143, [34 Pac. 618, 36 Pac. 407] ; *Rathbun* v. *White*, 157 Cal. 248, [107 Pac. 309] ; *Ryan* v. *Oakland Gas etc. Co.*, 10 Cal. App. 484, [102 Pac. 558].)

The point is made that the record shows only the requested instructions of the respective parties, and not the charge of the court itself. Because of this it is insisted that the record does not affirmatively show all of the instructions given by the court, and that therefore the error and conflict in the requested instructions cannot be considered.

The point is without merit. Each of the requested instructions was indorsed as "given" by the trial judge; and although the record does not show an independent charge by the court, it is evident that the court adopted the several requested instructions as the law of the case, and gave them without modification or reconciliation as its charge to the jury.

The trial court erred in its ruling admitting in evidence, over the objection of the defendant, the testimony of the witnesses Rittenhouse and Moore. The evident purpose of the testimony was to show that Deiter had made a settlement in full of his claims as a creditor of Hedgpeth Bros. prior to the rendition of the judgment in his favor in the justice's court, and therefore was not a creditor at the time of the levy of the execution by the defendant Carney.

It does not appear from the record before us that the subject matter of Deiter's claim, whether adjusted or not by Messrs. Rittenhouse and Moore, constituted the cause of action in the justice's court wherein Deiter recovered a judgment against Hedgpeth Bros. ; and, therefore, the testimony in question did not show or tend to show that the claim sued on in the justice's court had been settled in full prior to the judgment rendered therein. But apart from this, the judgment and execution in the justice's court action of *Deiter* v. *Hedgpeth Bros.* was offered and admitted in evidence in the present

case without objection. The judgment and execution were *prima facie* valid. The testimony of the witnesses Rittenhouse and Moore was offered and admitted apparently for the purpose of impeaching collaterally the validity of the justice's court judgment and execution. This could not be done without violating the settled rules of evidence in actions of this character, and to permit it was clearly error. (*Brush* v. *Smith,* 141 Cal. 466, [75 Pac. 55]; *Gregory* v. *Bovier,* 77 Cal. 121, [19 Pac. 232]; *Norcross* v. *Nunan,* 61 Cal. 642; 2 Jones on Evidence, 1st ed., sec. 601.)

The judgment and order appealed from are reversed and the cause remanded for a new trial.

Kerrigan, J., and Hall, J., concurred.