[Civ. No. 2631.   Fourth Dist.—April 2, 1941.]

JEROME B. O'CONNOR, Appellant, v. O'CONNOR, RICE & BARNES (a Corporation), Defendant; ROBERT F. SHIPPEE, Respondent.

2

Arthur J. Mullen, Raymond Tremaine and Franklin L. Knox, Jr., for Appellant.

Robert F. Shippee in *pro. per.*, for Respondent.

MARKS, J.—This is an appeal from a judgment awarding certain map books and maps, levied upon by the sheriff of Los Angeles County, to Robert F. Shippee, the third party claimant.

It is admitted that both plaintiff and Shippee were creditors of O'Connor, Rice & Barnes, Inc., the former owners and possessors of the books and maps, at the time of their sale to Shippee by the corporation. The only question presented is whether there was an immediate delivery followed by an actual and continued change of possession of the personal property sufficient to satisfy the provisions of section 3440 of the Civil Code.

The corporation was lessee of property belonging to plaintiff and defaulted in the payment of the rent. O'Connor brought an action against it which was compromised by a contract dated April 4, 1938. Silas P. Rice was the secretary-treasurer, and P. T. Barnes was the president of the corporation and the owners of its stock.

Shippee represented the corporation which could not pay his fee. Immediately after April 4, 1938, it was agreed that the map books and maps be sold to him and their value applied on his fee. The amount to be credited does not appear in the record. The books and maps were in the possession of the corporation, were used by it in its business and remained in its possession until about June, 1938, when Barnes secured the consent of Shippee to use the books him-

self.  They were in his possession when they were taken by the sheriff under a writ of execution issued in this case.

The only evidence of change of ownership or possession were labels pasted on the books and maps, upon each of which was written, "This is the property of Robert F. Shippee."  The books and maps had a value of less than $200.

It is the theory of Shippee, which must have been adopted by the trial court, that the sale was made in good faith, for a valuable consideration, without any actual intent to defraud; that while, prior to the sale, the property belonged to the corporation and was in its possession through the physical possession of Rice and Barnes, title was passed to him by the sale; that (until the next June) possession passed to him through the actual possession of Rice and Barnes who held the books and maps for him as his agents; that after June, possession remained in him through the actual possession of Barnes as his agent until the books and maps were taken by the sheriff; that the labels on the books and maps gave sufficient notice of change of ownership and change of possession.

The case of *Lilienthal* v. *Ballou,* 125 Cal. 183 [57 Pac. 897], is decisive of the question presented here.  A merchandising business had been conducted by Phillips Bros. & Co., and was managed by Adolph Phillips.  Owing to financial difficulties the owners made an assignment of the property to trustees for the benefit of all but one of their creditors.  Attachments on the store were released and it was reopened. It was operated by Adolph Phillips with the same employees as before except the bookkeeper.  The signs of Phillips Bros. & Co., were permitted to remain but another sign was displayed containing the names of the trustees, under which appeared, "Trustees, Successors to Phillips Brothers & Co." The money received in the business was deposited in a bank under the names of the trustees.  The old bill-heads were used with the addition of the names of the trustees by means of a rubber stamp.

In holding that these facts failed to show sufficient delivery and change of possession to satisfy the requirements of the Civil Code, the Supreme Court said:

"A change of possession is not effected merely by having the former owner manage the property as the servant, agent

or clerk of the pledgee. And this is especially so where there is so little outward sign of a change of ownership. Public policy requires a real and substantial compliance with the statute, and a failure should not be condoned for the hardships of a particular case.''

This case involved a pledge, not a sale of personal property. On the question of the necessity for an actual delivery and change of possession, the Supreme Court said:

''The delivery must be as complete as is required in case of sales of personal property by section 3440 of the Civil Code, and change of possession must be continuous and open. (*George* v. *Pierce*, 123 Cal. 172 [55 Pac. 775, 56 Pac. 53].)''

In discussing a similar question in *George* v. *Pierce, supra,* it was said:

''The transaction pertaining to this transfer was enveloped in writings, which was well enough for the purpose of evidencing the rights of the respective parties to it; but the statute which deals with a change of possession sufficient to defeat creditors does not contemplate writings, but acts. No writings pertaining to a transfer of personal property, regardless of their number or character, can create an actual and continued change of possession as to creditors of the pledgor. Acts only can do it. A visible, actual, continued change of possession must be had, and the law will be satisfied with nothing else. Writings can never accomplish these results.''

Before the sale to Shippee the property was in the possession of the corporation and in the physical custody of its officers. After the sale its possession and physical custody was not changed. The books and maps remained where they were before and were used by the same persons and for the same purposes. It is true that after the sale Barnes and Rice might have held the property as agents for Shippee, but that agency arose from a private contract between those parties. There was nothing different in the possession after the sale to notify any creditor of the corporation of the change in the capacity of the possession. The labels might have been evidence of change of title but they were not sufficient in themselves to establish change of possession. They had more bearing on title than on possession.

If recorded bills of sales and other such documents are not sufficient to serve as notice and proof of immediate

delivery and change of possession, certainly the labels could not have had that effect here. (See, *Gray* v. *Corey,* 48 Cal. 208; *Bunting* v. *Saltz,* 84 Cal. 168 [24 Pac. 167]; *Howe* v. *Johnson,* 107 Cal. 67 [40 Pac. 42]; *McKee Stair Bldg. Co.* v. *Martin,* 126 Cal. 557 [58 Pac. 1044]; *Ross* v. *Thomas,* 24 Cal. App. 734 [142 Pac. 102]; *Lamanet* v. *Lamanet,* 18 Cal. App. (2d) 402 [63 Pac. (2d) 1195]; *Hepner* v. *Hepner,* 32 Cal. App. (2d) 582 [90 Pac. (2d) 321].)

The change of possession here does not measure up to the requirements of an *actual* change of possession as defined in *Bunting* v. *Saltz, supra*:

"If the transfer was not accompanied by an immediate delivery, and followed by an actual and continued change of possession, it is conclusively presumed to be fraudulent, and therefore void as against the creditors of the vendor. (Civ. Code, sec. 3440.) 'Actual' means existing in act, and truly and absolutely so; really acted or acting; carried out; opposed to *potential, possible, virtual or theoretical.*"

The third party claimant seeks to support the holding of the trial court under the case of *Hassell* v. *Bunge,* 167 Cal. 365 [139 Pac. 800], and the many cases citing it with approval. There the seller had one J. F. Jones, its employee, in possession of the property prior to the sale. After the sale the purchaser employed Mr. Jones and placed him in possession. The property was on a mining claim operated by the Black Tom Mining Company through Lucellus Smith, its president. Prior to the sale, Smith closed the mine down and left it, placing Jones in charge. The sale to the purchaser was held valid as against creditors of the mining company. The property sold consisted of "mining and other machinery, some iron and steel, ten tons of concentrates, thirty tons of hay, eighty cords of wood, three horses, three sets of harness, and a wagon".

It is thoroughly established that where property is bulky and not readily transferable by actual manual delivery there may be a constructive delivery, but this is not true where the goods are of such a character as to permit of an actual passing of physical possession. (See, *Sequeira* v. *Collins,* 153 Cal. 426 [95 Pac. 876]; *Guthrie* v. *Carney,* 19 Cal. App. 144 [124 Pac. 1045].) This rule, together with the fact that the mine had been closed down by the mining company which had abandoned the property except as to

6

keeper Jones, removes any conflict between these cases and the others we have cited.

The third party claimant also urges that as it was held in *Hassell* v. *Bunge, supra,* that the question of the efficacy of the delivery was primarily one for the trial court, and as the trial court impliedly found an actual delivery and change of possession in the instant case, that finding is final and conclusive here.

This rule set forth in the Hassell case, and the many following it, cannot be questioned but its application here is doubtful. Where there is conflicting evidence or conflicting inferences to be drawn from the evidence on the question of actual delivery and change of possession, certainly the finding of the trial court on that question should be conclusive on appeal. But where, as here, the facts are all admitted, and there is no conflict in the evidence, and no conflicting inferences may be drawn from it, the question becomes one of law that may be decided on appeal.

The judgment is reversed.

Barnard, P. J., and Griffin, J., concurred.