[Civ. No. 21047. First Dist., Div. Three. Dec. 20, 1963.]

L. B. RADDATZ, Plaintiff and Appellant, v. THERON L. HEDGPETH et al., Third Party Claimants and Respondents.

634

Dermott, Maxwell & Hood and Richard B. Maxwell for Plaintiff and Appellant.

Anderson, McDonald & Belden and John E. McDonald for Third Party Claimants and Respondents.

SALSMAN, J.— Appellant Raddatz attached personal property alleged to belong to the debtor Sancal Lumber Company, a corporation, hereafter referred to as Sancal. Respondents Hedgpeth and Daniel filed a third party claim, alleging ownership of the attached property. After hearing, the trial court entered its judgment in favor of third party claimants. No findings were made by the trial court, and none were required in this proceeding. (Code Civ. Proc., § 689.) Appellant attacks the judgment, however, on the

ground that the evidence does not support it. We have examined the record and have concluded that appellant is correct in this contention and we therefore reverse the judgment.

The record shows that in 1958 Hedgpeth and Daniel owned land upon which they conducted a sawmill operation. On June 30, 1958, by conditional sales contract, they sold the land, mill and equipment to certain individuals who later, by consent of Hedgpeth and Daniel, transferred the property to Sancal. The items of property which comprised the mill were generally described in the conditional sales contract, and have been referred to in the record and briefs as the "conditional sales items." After Sancal took possession of the property it converted the mill operation into a stud mill, and in so doing purchased and incorporated into the mill many new items of equipment and machinery consisting of electric motors of various sizes and horsepower, electrical wiring, air compressors, gang saws and other items necessary to the new operation. Sancal also erected a steel building, 42 feet by 64 feet, bolted to a cement foundation, for use in the mill business. These new items were not covered by the conditional sales contract between Hedgpeth, Daniel and Sancal, and are referred to in the briefs as the "appeal" items.

It is not disputed that since 1959, Sancal has been indebted to appellant Raddatz in an amount in excess of $60,000.

The operations of Sancal were not successful. In addition to the debt due Raddatz, Sancal owed many others, and was also delinquent on payments due Hedgpeth and Daniel under their conditional sales contract. On September 19, 1960, Hedgpeth and Daniel exercised their right to terminate the conditional sales contract covering property sold to Sancal. At the time Hedgpeth and Daniel exercised their right to terminate, it was orally agreed that Sancal would turn over all of its assets to Hedgpeth and Daniel, who in turn agreed not to press certain claims for damages which they had against the corporation. Nevertheless, after Hedgpeth and Daniel gave notice of repossession, Sancal continued in possession of the property and continued to operate the mill on a limited basis. On October 17, 1960 Hedgpeth and Daniel agreed in writing with Sancal that the corporation could renew its operations at any time prior to April 1, 1961, or sell the mill if a buyer could be found. Under this written agreement Sancal was to pay Hedgpeth and Daniel $500 per month until such time as the mill was sold or reopened, and

if reopened the payments were to be the same as those stipulated in the original conditional sales contract. Sancal was also to keep the property insured, provide a watchman for the property, and keep up all payments due others from whom new equipment had been purchased but not paid for. Pursuant to this agreement Sancal advertised the property for sale in various publications, used some of the equipment in an operation at another site, and generally discharged its obligations under the written agreement of October 17, 1960, with Hedgpeth and Daniel. On February 15, 1961, the board of directors of Sancal held a special meeting and agreed to "turn over the physical assets of Sancal Lumber Company to Daniel and Hedgpeth without further protest to be retroactively effective as of October 15, 1960." On the same date Sancal executed a bill of sale covering all assets of the corporation to Hedgpeth and Daniel.

Appellant Raddatz attached the mill property on April 6, 1961, and the third party claim proceedings which gave rise to this appeal then ensued.

Appellant's basic contention that the transfer of the assets of Sancal was void as against appellant must be sustained.

Civil Code section 3440 provides in part: "Every transfer of personal property and every lien on personal property made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery followed by an actual and continued change of possession of the things transferred, is conclusively presumed fraudulent and void as against the transferor's creditors while he remains in possession. ..." The testimony of Hedgpeth and also that of an officer and principal stockholder of Sancal is to the effect that a transfer of all of the assets of Sancal was made to Hedgpeth and Daniel on September 19, 1960, the date upon which Hedgpeth and Daniel exercised their rights under their conditional sales contract. It is clear that this transfer embraced not only the items of property covered by the conditional sales contract, but also covered the many valuable items of personal property purchased by Sancal and added to the original equipment when the saw mill was converted to a stud mill. The record is equally clear that Sancal remained in physical possession of the property and conducted limited operations at the mill. There is no evidence at all to show that Hedgpeth and Daniel accepted any delivery of the property or took any actual possession of it.

The delivery required by Civil Code section 3440 must be immediate, actual, physical, apparent, and the change

of possession must be that which is usual and reasonably to be expected under the circumstances. ■ The transferee's possession must be continued and so open and unequivocal as to carry with it the usual marks and indicia of ownership. (*Hurlburd* v. *Bogardus*, 10 Cal. 518; *George* v. *Pierce*, 123 Cal. 172 [55 P. 775, 56 P. 53]; *Sequeira* v. *Collins*, 153 Cal. 426 [95 P. 876]; *Southern Cal. Collection Co.* v. *Napkie*, 106 Cal.App.2d 565, 570 [235 P.2d 434].) ■ Here there was no actual and continued change of possession of the physical assets of Sancal, and the transfer therefore falls directly within the terms of the statute.

Respondents argue that Civil Code section 3440 can have no application to the transfer here made because at the time of transfer Sancal was not in possession of the property. Respondents point to the fact that the mill operations were conducted on land owned by respondents and that, after notice of termination of the conditional sales contract, Sancal had no right to go upon respondents' lands or to exercise dominion over the property except by respondents' consent. The evidence is clear, however, that Sancal was in no way excluded from respondents' property, or prevented from continuing its operations just as it had done prior to the transfer. Outward appearances remained the same as before the transfer and there was nothing to suggest that Sancal's possession had wholly ceased, or that ownership of the mill and all of its personal property was, after the transfer, vested in Hedgpeth and Daniel. There was nothing in the conduct of the parties to give notice to creditors or to the public generally that any change of ownership or possession had taken place. Thus, Civil Code section 3440 has clear application to the facts and renders the transfer void. (See *McKee Stair Bldg. Co.* v. *Martin*, 126 Cal. 557 [58 P. 1044]; *O'Connor* v. *O'Connor, Rice & Barnes*, 44 Cal.App.2d 1, 5 [111 P.2d 656]; *Hepner* v. *Hepner*, 32 Cal.App.2d 582, 585 [90 P.2d 321].)

Respondents also argue that actual change of possession may be dispensed with when it would be unreasonably burdensome to require it and when it would lead to absurd results. (See *Shepherd* v. *Gamble*, 95 Cal.App.2d 890, 892-893 [214 P.2d 403]; *Rosenthal* v. *Taylor*, 87 Cal.App. 399, 401 [262 P. 395].) There was evidence that removal of some of the items added by Sancal to those covered by the original conditional sales contract might result in damage, and thus a transfer would be impractical. Nevertheless, the objection is not valid

because it is apparent from the record that change of possession could have been effectively accomplished by the simple device of excluding Sancal and all of its agents and employees from the mill premises, and by the assumption by respondents of full control of all mill operations. This was not attempted however. On the contrary, respondents permitted Sancal to remain in possession, to operate the mill, to insure it and to keep a watchman on the premises. We find no evidence in the record to support the theory that change of possession was impractical. (*McKee Stair Bldg. Co.* v. *Martin, supra,* at pp. 558-559.)

Respondents further contend they acquired ownership of the property by accession rather than by transfer, and therefore section 3440 is not applicable. (*Dersch* v. *Thomas,* 138 Cal.App.Supp. 785 [30 P.2d 630].) Civil Code section 1025 provides: "When things belonging to different owners have been united so as to form a single thing, and cannot be separated without injury, the whole belongs to the owner of the thing which forms the principal part; who must, however, reimburse the value of the residue to the other owner, or surrender the whole to him.

Respondents argue that there was a commingling of the two types of property used in the mill operations, that many items of property purchased by Sancal had been attached to items originally sold by Hedgpeth and Daniel and the whole used as an integrated mill operation. There was evidence that some of the new items purchased by Sancal could not be removed without interference with items covered by the original conditional sales contract, and there was some possibility of damage to the original items in event of removal. For accession to occur, however, more than mere commingling is required. Before the rule expressed in the code section may be made to apply it must appear that the accessory must be so closely united with the principal article as to constitute an integral and permanent part of it. (See 19 Temple L.Q. 89, 90.) The evidence would not support such a finding here. Much of the new equipment added by Sancal to the original equipment sold by Hedgpeth and Daniel consisted of electric motors, and there is no evidence to show that these motors could not readily be separated from the other equipment without damage, or that they became a permanent and integral part of the mill. Moreover, there was evidence, inconsistent with respondents' theory of accession, that many new items had been purchased by Sancal on conditional sales contracts, and that the vendors of these items

were constantly threatening to repossess their equipment. There was also testimony from the principal officer of Sancal that some of the disputed items could readily be used in places other than lumber mills, and there was a great deal of testimony as to the value of each of the different items of property if sold separately. We conclude therefore that respondents' theory of acquisition of title by accession cannot be supported on the record before us.

The judgment is reversed.

Draper, P. J., and Devine, J., concurred.