In re MURRIETA HOT SPRINGS, a California Corporation, Bankrupt.

INTERNATIONAL CANNING MACHINERY, LTD., Plaintiff,

v.

MURRIETA HOT SPRINGS, a California Corporation, Leonard Goldman, Trustee, Defendants.

Leonard A. GOLDMAN, Trustee in Bankruptcy of Murrieta Hot Springs, a California Corporation, Cross–Complainant,

v.

INTERNATIONAL CANNING MACHINERY, LTD., Cross–Defendant.

Bankruptcy No. 78–01818–DN.

United States Bankruptcy Court, C. D. California.

Aug. 15, 1980.

David R. Weinstein, Danning, Gill, Gould & Joseph, Sherman Oaks, Cal., for defendant and cross-complainant Leonard A. Goldman, Trustee in Bankruptcy of the Estate of Murrieta Hot Springs.

Arthur D. Cohen, Ball, Hunt, Hart, Brown & Baerwitz, Long Beach, Cal., for plaintiff and cross–defendant Intern. Canning Machinery, Ltd.

## MEMORANDUM OF DECISION

DAVID N. NAUGLE, Bankruptcy Judge.

On July 10, 1980, the above–captioned adversary proceeding came on regularly for trial, Arthur D. Cohen, Esq., of Ball, Hunt, Hart, Brown & Baerwitz, appearing for the plaintiff and cross–defendant International Canning Machinery, Ltd.; David Weinstein, Esq., of Danning, Gill, Gould & Joseph, appeared for the defendant and cross–complainant Leonard A. Goldman, Trustee in Bankruptcy of the Estate of Murrieta Hot Springs, a California corporation (hereinafter referred to as "the Trustee").

An involuntary petition in bankruptcy was filed against Murrieta Hot Springs on March 3, 1978. Prior to trial, the then alleged bankrupt filed a petition for relief under Chapter XI of the Bankruptcy Act of 1898 on July 31, 1978. On April 10, 1979, the debtor was adjudicated a bankrupt.

Pursuant to the Bankruptcy Reform Act of 1978, Pub.L.95–598, title IV, § 403(a), this case is to be governed under the old Bankruptcy Act as if Public Law 95–598 had not been enacted.

The basic facts on which this adversary proceeding turns are undisputed; the following 16 are taken verbatim from the Stipulation of Facts filed June 12, 1980, by the parties:

1. Plaintiff, INTERNATIONAL CANNING MACHINERY, LTD., is a corporation duly authorized and existing under and by virtue of the laws of the State of Cali-

fornia, having its principal place of business in Wilmington, California.

2. On or about March 3, 1978, an Involuntary Petition in Bankruptcy was filed against MURRIETA HOT SPRINGS, a California corporation, and thereafter said Debtor was duly adjudicated a bankrupt.

3. Defendant, LEONARD A. GOLDMAN, has been, and now is, the duly appointed, qualified and acting Trustee in Bankruptcy of the estate of MURRIETA HOT SPRINGS, Bankrupt.

4. INTERNATIONAL CANNING MACHINERY, LTD., is in the business of selling fruit, juice and fish processing and canning machinery, including boilers used to process steam.

5. MURRIETA HOT SPRINGS, a resort, had relied upon two Dixon package-type fire tube boilers to produce hot water. Prior to September 15, 1975, however, it determined to redesign its hot water system so that the two boilers would no longer be needed.

6. On or about September 15, 1975, plaintiff purchased the two Dixon package-type fire tube boilers from MURRIETA HOT SPRINGS. Plaintiff paid MURRIETA HOT SPRINGS the sum of Ten Thousand Dollars ($10,000.00) for the two boilers.

7. The boilers plaintiff purchased from MURRIETA HOT SPRINGS are cigar-shaped. Each is 10 feet in diameter and approximately 20 feet long. Each weighs 18 to 20 tons. In addition to purchasing the boilers, plaintiff purchased certain related equipment attached to the boilers, including pumps which weigh 600 to 700 pounds each, motors, heavy duty 8-inch diameter piping and a large smoke stack.

8. The boilers are housed in a separate building on the MURRIETA HOT SPRINGS property. The boilers are too large to fit through the doors of the building. In order to remove the boilers from the building, part of the building must be demolished.

9. It is very expensive to move the boilers. Plaintiff maintains a storage yard in Wilmington, California. In addition to the expense of demolishing part of the boiler building, moving the boilers from MURRIETA HOT SPRINGS to Wilmington would require renting two low-bed semi-trailers and trucks, hiring a crew of six, renting winches to raise the boilers from the subterranean floor level of the boiler room to the ground level outside, and renting a crane to load the boilers on the flat-bed trucks. The estimated cost of moving the boilers to the plaintiff's Wilmington yard is $10,000.00.

10. If moved to Wilmington, the boilers would remain outside and subject to the weather until a buyer could be found. If the boilers remained outside for longer than a short period of time, it would cost approximately $5,000.00 to recondition them.

11. When finally sold, the boilers would have to be reloaded on flat-bed trucks at plaintiff's Wilmington yard. Again, a crane would be required.

12. In light of the above, plaintiff determined to leave the boilers at MURRIETA HOT SPRINGS until sold, and to sell them f. o. b. MURRIETA HOT SPRINGS. Accordingly, plaintiff asked MURRIETA HOT SPRINGS if the boilers could remain in MURRIETA HOT SPRINGS' boiler building until a buyer could be found. MURRIETA HOT SPRINGS agreed that they could so long as the property was not needed for other purposes. MURRIETA HOT SPRINGS repeatedly assured the plaintiff that the property was not needed and that the boilers could remain in the boiler building. Plaintiff contracted to sell the boilers f. o. b. MURRIETA HOT SPRINGS, but when it tried to arrange to remove them from the boiler building, it was informed that the boilers were in the possession of the defendant and could not be taken.

13. The boilers are currently in the boiler building owned by defendant.

14. Upon receipt of the Ten Thousand Dollars ($10,000.00) payment for the boilers, MURRIETA HOT SPRINGS noted the sale of the boilers to plaintiff on its corporate books and records.

15. Apart from noting the sale on its corporate books and records, neither MURRIETA HOT SPRINGS nor plaintiff took any additional steps to provide notice to third parties that the boilers theretofore owned by MURRIETA HOT SPRINGS had been acquired by plaintiff.

16. On March 3, 1978, when an Involuntary Petition in Bankruptcy was filed against MURRIETA HOT SPRINGS, the MURRIETA HOT SPRINGS property consisted of approximately 2,500 acres, including a golf course. The approximate value of the MURRIETA HOT SPRINGS property at the time, including improvements and personal property situated thereon, excluding the two boilers sold to INTERNATIONAL CANNING MACHINERY, LTD., was in excess of one million dollars.

The following inferences drawn from the stipulated facts above are added as findings of fact:

17. The time between September 15, 1975, and March 3, 1978, exceeded a commercially reasonable time for the plaintiff to remove the boilers from the MURRIETA HOT SPRINGS real property.

18. There was no complete and unconditional delivery of the boilers to the plaintiff in view of the structural alterations necessary to permit removal of the boilers from the building in which they were housed.

19. Entry of the September 15, 1975, sales transaction in the book's of MURRIETA HOT SPRINGS did not amount to actual change of possession.

20. There was no actual and open change of possession at or after September 15, 1975, and before March 3, 1978, sufficient to give notice to creditors and others of the transfer.

■ The rights of the parties to this dispute must be resolved under the substantive law of California, applied in the federal courts under the principles set forth in the diversity case of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938). It is the source of the right sued on and not the ground on which federal jurisdiction is founded which deter-mines the governing law. See *Maternally Yours v. Your Maternity Shop*, 234 F.2d 538, 540–541 ftn. 1. (2d Cir. 1956).

■ The federal court is to be governed by the law of the state whether it "be declared by its legislature in a statute or by its highest court in a decision." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

■ The California legislature has enacted a rule of law in the form of a "conclusive presumption" that a transfer of personal property not followed by immediate delivery and actual and continued change of possession is void as against one in the position of the Trustee. The statute (California *Civil Code*, § 3440) is quoted in part below:

Every transfer of personal property and every lien on personal property made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery followed by an actual and continued change of possession of the things transferred, is conclusively presumed fraudulent and void as against the transferor's creditors while he remains in possession and the successors in interest of those creditors, and as against any person on whom the transferor's estate devolves in trust for the benefit of others than the transferor and as against purchasers or encumbrancers in good faith subsequent to the transfer. . . .

There is no dispute that the Trustee's powers under §§ 70c and 70e(1) of the Bankruptcy Act of 1898 qualify him as one of the persons for whom the benefits of California *Civil Code*, § 3440, apply.

The California Supreme Court has ruled on cases comparable to the one at bar. *Sequeira v. Collins*, 153 Cal. 426, 95 P. 876 (1908), deals with a purchase of 640,000 bricks (partially in kiln); although the decision goes against the purchaser, the court indicates in dicta that removal of ponderous, bulky personalty from the vendor's land is not essential to an adequate delivery and change of possession. The *Sequeira*

court relies on a prior case against a brick kiln purchaser, *Woods v. Bugbey*, 29 Cal. 466 (1866), decided under a predecessor statute (Laws 1850, p. 267, cited and quoted in part at 29 Cal. 466, 471–2 and 474).

█ Good faith and adequate consideration are not material and are not defenses. See *Hepner v. Hepner*, 32 Cal.App.2d 582, 585, 90 P.2d 321 (1939). However, § 3440 seems to be applied with some greater strictness in cases of dubious faith. See *Wargin v. Wargin*, 29 Cal.2d 843, 180 P.2d 349 (1947).

█ The time factor cannot be ignored in construing § 3440. It contains the word "immediately," for which the California judicial construction is "within a reasonable time having due regard to the nature and circumstances of the case." *Integrated, Inc. v. Alec Fergusson Electrical Contractors*, 250 Cal.App.2d 287, 295, 58 Cal.Rptr. 503, 508–509 (1967), citing *Feeley v. Boyd*, 143 Cal. 282, 76 P. 1029, 65 L.R.A. 943.

Although growing crops are not susceptible to manual delivery until harvested, possession of them must change immediately after harvesting or the creditor/trustee prevails. In *Westcott v. Nixon*, 132 Cal.App. 490, 23 P.2d 75 (1933), 100 tons of hay was sold in May while in the field. By October, all of the hay had been cut and was stored in the vendor's barn, but the purchaser made no visible effort to take delivery or to exercise any control over it until February. Since there had been no open and unequivocal transfer of possession, the purchaser lost.

Both the nature of the purchaser's possession and the flexible interpretation in each case are emphasized in the following quotation from *McGaffey Canning Co. v. Bank of America*, 109 Cal.App. 415, 435–436, 294 P. 45, 53 (1930):

. . . There must be open, visible, unequivocal change of possession, manifested by such substantial outward signs as to make it evident to the world that the control of the owner has wholly ceased, and that another has acquired, and is openly exercising, the exclusive

dominion over the property. *Stevens v. Irwin*, 15 Cal. 503, 506, 76 Am.Dec. 500; *Cahoon v. Marshall*, 25 Cal. 197, 201; *Godchaux v. Mulford*, 26 Cal. 316, 324, 85 Am.Dec. 178; *Sequeira v. Collins*, 153 Cal. 426, 431, 95 P. 876; *Hassell v. Bunge*, 167 Cal. 365, 366, 139 P. 800.

Actual change of possession means existing in act, and truly and absolutely carried out, as opposed to formal, potential, virtual, or theoretical change. *Bunting v. Saltz*, 84 Cal. 168, 170, 24 P. 167; *Guthrie v. Carney*, 19 Cal.App. 144, 150, 124 P. 1045. The proof required to show actual change of possession is not measured by any fixed set of rules. Dependence must be placed upon the facts and circumstances of each particular case; and usually the determination must rest upon the finding of the court or the jury after hearing the evidence adduced on both sides. *Claudius v. Aguirre*, 89 Cal. 501, 503, 26 P. 1077; *Dubois v. Spinks*, 114 Cal. 289, 293, 46 P. 95; *Feeley v. Boyd*, 143 Cal. 282, 285, 76 P. 1029, 65 L.R.A. 943; *Jarvis v. Webber*, 196 Cal. 86, 99, 236 P. 138; *Bosbyshell v. Cline*, 51 Cal.App. 109, 113, 196 P. 274; *Gray v. Little*, 97 Cal.App. 442, 449, 275 P. 870.

See also 2 Witkin, *Summary of California Law*, Sales, §§ 198–199, 8th ed., pp. 1233–1235.

█ Symbolic delivery and unobservable transfer of possession are insufficient. See *Washington Lumber & Millwork Co. v. McGuire*, 213 Cal. 13, 1 P.2d 437 (1931) [hand on truck]; *Canal–Randolph Anaheim, Inc. v. Wilkoski*, 103 Cal.App.3d 282, 163 Cal.Rptr. 30 (1980); *Southern Cal. Collection Co. v. Napkie*, 106 Cal.App.2d 565, 571, 235 P.2d 434; *O'Connor v. O'Connor, Rice & Barnes*, 44 Cal.App.2d 1, 5, 111 P.2d 656 (1941).

These cases and the one most favorable to the Trustee, *Raddatz v. Hedgpeth*, 223 Cal. App.2d 633, 35 Cal.Rptr. 855 (1963) [sawmill equipment] must be compared to the authorities tending to favor the plaintiff. The cases holding for purchasers can generally be distinguished because of time, open exercise of dominion, and other factors.

78

*Rosenthal v. Taylor*, 87 Cal.App. 399, 262 P. 395 (1927), for example, involved a sale of pumps and other equipment which the purchaser promptly assembled and moved, some items being left on the seller's property in a shed for convenience. In *Shepherd v. Gamble*, 95 Cal.App.2d 890, 214 P.2d 403 (1950), only a week went by between the purchase of a disabled 11½-ton tractor and seizure by the levying officer of the vehicle on the seller's land. Less than two months elapsed between a bank's advancement of funds and removal of cabinets on which work continued in the bankruptcy case of *In re Lundgren Wood Products*, 198 F.Supp. 908 (N.D.Cal.1961), which may also be distinguishable as involving a validly recorded security interest.

■ The record here is devoid of steps by the purchaser to manifest its ownership and possession prior to the filing date. The vendor's book entry was comparable to a receipt and not a sufficient delivery and outwardly visible change of possession. The elapsed time, about two and one-half years from sale date to filing of the involuntary petition, exceeded the limits of § 3440, even for the ponderous personalty involved. Under all the circumstances of this case, there was no adequate delivery and change of possession.

Thus follow my conclusions of law:

I. All findings of fact which contain conclusions of law are incorporated herein.

II. The Trustee's powers under §§ 70c and 70e(1) of the Bankruptcy Act of 1898 qualify him as one for whom the benefits of § 3440 of the California *Civil Code* apply.

III. The transfer of the boilers to the plaintiff is void as against the Trustee.

IV. The Trustee's title to the boilers is superior to the plaintiff's.

Counsel for the Trustee shall prepare and lodge a proposed judgment in accordance with USDC Local Rule 7.